File Name:  07a0218n.06
Filed:  March 26, 2007

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No.  06-3599

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

ELENA DRITARJA,

      Petitioner,

v.

ALBERTO GONZALES, Attorney General of the
United States,

      Respondent.

ON APPEAL FROM THE
BOARD OF IMMIGRATION
APPEALS

_____/

**OPINION**

Before:      KENNEDY, MARTIN, and SUTTON, Circuit Judges.

      BOYCE F. MARTIN, JR., Circuit Judge.  Petitioner Elena Dritarja appeals from an adverse decision of the Board of Immigration Appeals regarding her petition for asylum and other relief from removal.

I

      Dritarja is a native and citizen of Albania, where, according to her testimony, she and her family were persecuted on account of their Serbian ethnicity.  Dritarja's petition for asylum specifically focused on two troubling incidents.  First, on December 24, 2001, while she and her parents were preparing to celebrate the Christmas holiday at their family home, a police officer

accompanied by three civilians invaded the home, assaulted Dritarja and her mother, and arrested her father. Her father was held in jail for two days without being charged, where he was tortured and severely beaten before being released.

The second incident occurred on June 18, 2002, when Dritarja was walking to the grocery store to buy some oil and sugar for her mother. Three men pulled up beside her in a white Mercedes and forced her into the car at gunpoint. They drove for roughly thirty minutes and brought Dritarja to an abandoned house, where she was forcibly raped by two of her assailants. While driving her back from the house, the men told Dritarja that her family should return to Serbia and her father should withdraw from the political organization of which he was a member (the Moraca-Rozafa, an association of ethnic Serbians and Montenegrins living in Albania). The men dropped her off approximately two kilometers from her house, and she later informed her mother what had happened. Her mother helped treat the physical injuries she had suffered from the rape, and arranged for Dritarja to leave the country.

Dritarja's parents paid $15,000 for her to be smuggled with a fake passport into the United States. Dritarja claims to have entered the United States through John F. Kennedy Airport in New York on August 2, 2002. She affirmatively applied for asylum on March 5, 2003, but this petition was denied. She was subsequently served with a notice to appear and charged with removability. She sought relief in the form of asylum, withholding of removal, and protection under the Convention Against Torture. Her case was removed from New York to Detroit, where her requested relief was denied by an immigration judge. The judge ruled that Dritarja could not establish that she had applied for asylum within one year of her arrival in the United States, as there was no

documentary evidence of her date of entry, despite affidavits from both of her parents that placed her in Albania less than a year prior to the time she affirmatively filed for asylum. The immigration judge also made an adverse credibility finding with regard to Dritarja's claim that she had been raped. The judge relied on what she deemed to be Dritarja's inconsistent explanations about why her father was arrested and whether she told her father about the rape, varying pronunciations used by Dritarja to name the leader of Moraca-Rozafa, and Dritarja's demeanor during her testimony, as well as the assertion in State Department country reports concluding that Serbians and Montenegrins were not persecuted in Albania. For example, according to the immigration judge, Dritarja's claim that she did not tell her father of the rape was contradicted by an affidavit, submitted by Dritarja's mother, stating: "she told *us* that she had been raped . . . ." (Emphasis added.) The judge concluded that Dritarja "quite simply submitted no evidence that any harm will come to her from the government of Albania because of any basis which she has articulated in her application."

The Board of Immigration Appeals affirmed and adopted the decision of the immigration judge, finding that "there are not exceptional circumstances to overcome the respondent's failure to timely file her application for asylum," and that "without credible testimony the respondent is not eligible for withholding of removal or relief under the United Nations Convention Against Torture." Dritarja now appeals from the Board's order.

II

## A. Asylum Claims

Dritarja's allegations of the treatment to which she and her family were subjected are obviously troubling. However, we must defer in large part to the immigration judge's adverse

credibility determination. Moreover, in light of the immigration judge's determination that Dritarja's petition for asylum was untimely, we are without jurisdiction to review this aspect of the claim. *See Almuhtaseb v. Gonzales*, 453 F.3d 743, 746-48 (6th Cir. 2006). We would have jurisdiction to review the denial of asylum if it implicated any constitutional claims, such as a due process violation, or matters of statutory construction. *Id*. at 748. Yet Dritarja makes no such claims, nor are any due process violations apparent to us. Because we lack jurisdiction, we cannot review Dritarja's asylum claim and accordingly dismiss it.

**B. Withholding of Removal and Convention Against Torture Claims**

We are not similarly barred from reviewing Dritarja's other claims for relief, and thus we address them in somewhat greater detail. In order to be granted withholding of removal, an applicant "must provide evidence showing that there is a 'clear probability' that his or her life would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion." *Ben Hamida v. Gonzales*, No. 06-3134, 2007 U.S. App. LEXIS 5258, at *20 (6th Cir. Mar. 7, 2007). This involves a standard that is substantively similar but more burdensome for an applicant to meet than a claim for asylum. *Id*. To gain relief under the Convention Against Torture, an applicant must show that it is more likely than not that she will be tortured upon return to her country. *Id*. at *21. The immigration judge and the Board premised their rejection of both of Dritarja's claims on the adverse credibility determination, declining to assess whether her allegations would show a clear probability of persecution, or a likelihood of torture, if taken as true.

Factual findings, including adverse credibility determinations, are reviewed under the substantial evidence standard, and "are conclusive unless any reasonable adjudicator would be

compelled to conclude to the contrary." *Id*. at \*4 (quoting 8 U.S.C. § 1252(b)(4)(B)). We review the immigration judge's opinion directly where its reasoning is adopted by the Board, as occurred here. *Id*. Although few of the inconsistencies upon which the immigration judge based her adverse credibility determination are profound when taken alone, in light of their cumulative effect, we cannot say that we are compelled to reach a contrary conclusion regarding Dritarja's credibility. *See Birbili v. Gonzales*, No. 05-3941, 2006 U.S. App. LEXIS 28281, at \*6 (6th Cir. Nov. 13, 2006) ("[T]his case appears to fall into the category of asylum cases in which the bases for the immigration judge's adverse credibility determination are not overwhelming, but which are not so deficient as to compel a contrary result, as is required under the applicable standard of review.").

Several of the issues identified by the immigration judge can be viewed as attempts by Dritarja to "enhance" her claims of persecution, which supports their use in an adverse credibility determination. *See Ramaj v. Gonzales*, 466 F.3d 520, 527 (6th Cir. 2006). Specifically, the immigration judge ruled that when first questioned about the arrest of her father, Dritarja said that she did not know why he was arrested. At the hearing, however, she said that it was a result of his participation in a pro-Serbian political group. There is good reason to believe that this change in Dritarja's story, minor as it may seem, reflected an effort to construct a meritorious asylum claim. The immigration judge also specifically noted that during her testimony, Dritarja appeared to be "reciting a learned script." This type of first-hand observation is the very reason that we defer to finders of fact. Further, the inconsistencies between Dritarja's account of telling only her mother about the rape and the statement in her mother's affidavit that Dritarja told "us" (as in both parents)

about the attack might on the one hand be a relatively minor inconsistency, but on the other could be indicative of a failed attempt by the family to fabricate a story.

These several points might not necessarily convince us that Dritarja was lying, or that we would have made the same decision as the immigration judge, but that is not our standard of review in a case such as this. And even if we were to believe Dritarja, we cannot say that she has met the high standard required for relief in this case: namely, showing a clear probability that she will be persecuted, or that it is more likely than not she will be tortured, upon her return to Albania.

III

For the above reasons, we dismiss Dritarja's petition for review of her time-barred asylum claim, and we affirm the Board's denial of her requests for withholding of removal and relief under the Convention Against Torture.