**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0575n.06
Filed: September 24,2008

**No. 07-3976**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ABDOULAYE LAM, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | ON PETITION FOR REVIEW OF |
| | ) | AN ORDER OF THE BOARD OF |
| V. | ) | IMMIGRATION APPEALS |
| | ) | |
| | ) | |
| | ) | |
| MICHAEL B. MUKASEY, Attorney General, | ) | OPINION |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |
| | ) | |

BEFORE: COLE and GIBBONS, Circuit Judges; FORESTER, Senior District Judge.[*]

FORESTER, Senior District Judge.

Petitioner-Appellant Abdoulaye Lam seeks review of a Board of Immigration Appeals

("BIA") order affirming an Immigration Judge's ("IJ") denial of his claims for asylum, withholding

of removal, and protection under the Convention Against Torture ("CAT"). After a hearing, the IJ

concluded that Lam was not credible and therefore denied his claims. Alternatively, the IJ found that

Lam failed to show that he entered the United States within one year of application for asylum and

---

[*] The Honorable Karl S. Forester, Senior United States District Judge for the
Eastern District of Kentucky, sitting by designation.

1

denied his asylum application on timeliness grounds. The BIA affirmed the IJ's decision, and Lam appealed. We deny the petition for review in part.

## I

Lam is a native and citizen of Mauritania, a country located in northwest Africa where the population and the political authority are dominated by white Moors. Historically, there has been strong tension between the white Moors and the minority ethnic groups inhabiting Mauritania that has given rise to a number of conflicts in recent years. Lam claims to be a member of one minority ethnic group, the Fulanis, who oppose the current government of Mauritania.

Lam claims he entered the United States on August 25, 2004 through Kennedy Airport in New York City. Other than an airline ticket receipt in the name of Djibymr Lam, there is no record of Lam's entry into the United States. On January 3, 2005, Lam filed an application seeking asylum and withholding of removal based on race, political opinion, membership in a particular social group, and the Convention Against Torture.[1] In his application, Lam claimed that he was born in 1982, and spent his early childhood with his parents and four siblings in Mauritania. Lam contends that Mauritanian police officers raided his home in 1989, arrested his parents, and placed all the children in detention. According to Lam, his family was arrested, beaten and tortured because of his parents' involvement in a revolutionary group. Lam and his family subsequently fled to Senegal.

On February 9, 2005 the United States Department of Justice served Lam with a "Notice to Appear" charging that he was subject to removal for entering the United States without valid documents. Lam did not challenge the factual allegations against him and conceded that he was

---

[1]If Lam indeed entered the United States on August 25, 2004, his asylum application was timely filed. The IJ, however, found that Lam had not established his date of entry.

subject to removal. Lam subsequently obtained counsel and filed a supplement to his asylum application. In his supplement, Lam contends that the person who completed his initial application did not include his statements about two arrests by the Mauritanian police in October 2003. Specifically, Lam's supplemental application alleges that he returned to Mauritania from Senegal in October 2003 because he thought he would be safe there. Once in Mauritania, Lam engaged in work with human rights organizations, including distributing flyers and attending meetings. He claims that he was arrested on October 15, 2003, and was beaten, tortured, and released two days later. After his release, he continued his involvement in human rights organizations. Lam was arrested again on October 31, 2003, beaten, tortured, and taken to a hospital. He claims he escaped from the hospital after three nights and stayed at the home of a friend, Dimba Cire, before fleeing to Senegal.

An IJ conducted a hearing on January 19, 2006 at which Lam testified. Lam's testimony included additional information about the alleged arrests in October 2003, as well as information for the first time about problems he encountered with the police while attending school in Senegal. In both his original application and supplemental application, Lam failed to mention the fact that he was forced into hiding for nine months in Senegal after learning that the Senegalese police came to his dorm room on campus looking for him as a result of his involvement with Mauritanian refugees.

At the hearing, the IJ found that Lam's testimony was not credible and that his asylum application was untimely, and therefore denied his application for asylum, withholding of removal, and relief under the CAT. Lam appealed the IJ's decision to the BIA, which affirmed the IJ's decision. Lam then filed a timely petition for review in this court.

On appeal, Lam contends that the BIA and IJ erred in their credibility determination. Lam

3

also claims that the IJ erred as a matter of law in finding that he failed to make the requisite showing of timeliness. The Government contends that the IJ's credibility finding was supported by the evidence, and that this Court lacks jurisdiction to review the timeliness decision.

**II**

Because the timeliness of Lam's asylum application impacts this Court's jurisdiction, we turn to that issue first. An alien who qualifies as a refugee may apply to the Attorney General for asylum if the alien can demonstrate a "well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion" if returned to his country of origin. *Selami v. Gonzales*, 423 F.3d 621, 625 (6th Cir. 2005) (citing 8 U.S.C. §§ 1158(b)(1), 1101(a)(42)(A)). However, if the alien fails to demonstrate by clear and convincing evidence that he filed for asylum within one year of his arrival in the United States, or that extraordinary circumstances excused his tardy filing, the asylum application will not be considered. *See* 8 U.S.C. § 1158(a)(2)(B). Here, both the IJ and the BIA determined that Lam did not file his application within the allotted time period.

Courts generally lack jurisdiction to review a determination that an alien's application was untimely. *Almuhtaseb v. Gonzales*, 453 F.3d 743, 746-47 (6th Cir. 2006); *Castellano-Chacon v. INS*, 341 F.3d 533 (6th Cir. 2003). However, courts may review the timeliness of an asylum application only to the extent that it seeks review of "constitutional claims or matters of statutory construction." *Almuhtaseb*, 453 F.3d at 478. Neither such exception exists in this case. Therefore, we lack jurisdiction to review the decision that Lam's application for asylum was untimely. *Huang v. Mukasey*, 523 F.3d 640, 650 (6th Cir. 2008); *Almuhtaseb*, 453 F.3d at 748. The asylum portion of Lam's appeal is dismissed for lack of jurisdiction. *Huang*, 523 F.3d at 650.

**III**

Although the timeliness issue is dispositive of Lam's asylum claim, his withholding of removal and CAT protection claims are not affected by that determination. *See Liu v. INS*, 508 F.3d 716, 722 (2nd Cir. 2007). "We review de novo the legal determinations made by the IJ or BIA, but review factual findings under the deferential 'substantial evidence' standard." *Zoarab v. Mukasey*, 524 F.3d 777, 780 (6th Cir. 2008). "Where the BIA adopts the IJ's reasoning, the court reviews the IJ's decision directly to determine whether the decision of the BIA should be upheld on appeal." *Gilaj v. Gonzales*, 408 F.3d 275, 282-83 (6th Cir. 2005). Any findings of fact by the IJ are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). In other words, the IJ's determination should be upheld unless evidence "not only supports a contrary conclusion, but indeed *compels* it." *Ouda v. INS*, 324 F.3d 445, 451 (6th Cir. 2003) (internal citation omitted and emphasis in original).

A supportable finding that the alien is not credible justifies denying relief. *Ceraj v. Mukasey*, 511 F.3d 583, 591 (6th Cir. 2007). The fact that an alien's story is internally inconsistent may result in a finding that the alien is not credible. *Id.* Even with this deferential review of these credibility determinations, however, "the immigration judge's conclusion must be supported by specific reasons and must be based upon issues that go to the heart of the applicant's claim." *Chen v. Gonzales*, 447 F.3d 468, 472 (6th Cir. 2006). In other words, the inconsistencies must be relevant to the basis of the alien's application for relief and must be supported by evidence, not speculation. *Vasha v. Gonzales*, 410 F.3d 863, 869 (6th Cir. 2005).

A review of the IJ's decision reveals that the inconsistencies in Lam's testimony are significant and relevant to this case. The first and most significant inconsistency is Lam's failure

5

to include the October 2003 arrests in Mauritania in his original application. Only after Lam received his Notice to Appear and hired an attorney did Lam file a supplemental asylum application in which he refers to the alleged October 2003 arrests. Lam's explanation that the person who completed his asylum application failed to include the arrests in the application is not credible because the arrests are not minor omissions likely to be omitted during translation, but rather go to the heart of his claim that he was not safe in Mauritania. The IJ found it unlikely that the person filling out the form would omit such relevant information, and this Court agrees. Moreover, although Lam claims corroborating evidence in the form of a letter from his friend lends credence to his arrest allegations, the letter from Demba Cire indicates that Lam was arrested once in 2001, not twice in 2003, as Lam testified.

The second inconsistency is Lam's failure to include his problems in Senegal in the original application or the supplement. Lam's claim, based on his testimony at the hearing that he was no longer safe in Senegal, is also crucial to his application and the failure to include this information in either the application or supplement further supports the IJ's credibility finding. Finally, other inconsistencies in Lam's applications and his testimony add further support to the IJ's credibility finding, including discrepancies related to the birth place of his mother and his father's employer.

The IJ's credibility finding was based on these inconsistencies. The inconsistencies between his applications and his subsequent testimony related to the alleged 2003 October arrests and his problems in Senegal are not irrelevant, but rather go to the heart of his claim and could reasonably create skepticism about whether Lam was telling the truth. Furthermore, Lam failed to present any corroborating evidence. Thus, there is substantial evidence in this record to support the IJ's adverse credibility finding and the evidence of record does not "compel" a contrary conclusion.

## IV

In light of Lam's lack of credibility, the IJ determined that Lam could not sustain his burdens of proof and persuasion for a grant of withholding of removal or protection under the CAT. The BIA adopted the IJ's determination. We agree.

In order to show that he is entitled to withholding of removal, Lam must show that there is a "clear probability" that he will be subject to persecution in the proposed country of removal on account of his "race, religion, nationality, membership in a particular social group, or political opinion." *Vasha*, 410 F.3d at 875 (quoting 8 C.F.R.§ 1208.16(b)). To obtain relief under the CAT, Lam must show that it is more likely than not that he will be tortured if he is deported to the proposed country of removal. *Ceraj*, 511 F.3d at 594; 8 C.F.R. § 1208.16(c)(2). According to the regulations, torture is "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1)).

Because we are bound by the IJ's conclusion that Lam's testimony lacks credibility, the only other evidence offered in support of his claim of fear of persecution and torture are the 2004 reports he submitted from the Department of State. The 2006 reports, attached to Lam's brief, were not a part of the record below and cannot form a basis for this Court's review. 8 U.S.C. § 1252(b)(4)(A); *Anssari-Gharachedaghy v. INS*, 246 F.3d 512, 513 (6th Cir. 2000).

The 2004 Department of State report on Human Rights Practices in Mauritania recognizes that "the Government's human rights record remained poor." The report also notes that there are unconfirmed reports of torture and arbitrary arrests and detention. Additionally, according to the report, "[e]thnic minorities faced societal discrimination" and "were underrepresented in the military

7

and security sectors." While this report might support a finding that some Fulanis have been persecuted and tortured and that ethnic minorities face societal discrimination, it does not compel the conclusion that there is a clear probability that Lam will be persecuted or that it is more likely than not that he will be tortured simply because of his ethnicity, or because he applied for asylum.

Moreover, the record reflects that Lam has a safe haven in Senegal because he lived there from 1989 until 2003, and was allowed to attend the university during that time. Lam also returned to Senegal for an additional nine months, during which time he received treatment at the hospital. His parents and grandfather remain in Senegal. Accordingly, there is substantial evidence to support the BIA's determination that Lam is not entitled to withholding of removal or protection under the CAT.

## V

For the foregoing reasons, we dismiss the petition to the extent it seeks review of the denial of Lam's asylum application and deny the petition to the extent it seeks review of the denial of Lam's withholding of removal and CAT protection claims.