NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0481n.06

No. 09-3548

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ASSY DIOUF, | ) | |
| | ) | |
| Petitioner, | ) | ON PETITION FOR REVIEW OF AN |
| | ) | ORDER OF THE BOARD OF |
| v. | ) | IMMIGRATION APPEALS |
| | ) | |
| ERIC H. HOLDER, JR., Attorney General, | ) | |
| | ) | |
| Respondent. | ) | |

Before: GILMAN and COOK, Circuit Judges; and OLIVER, District Judge.[*]

COOK, Circuit Judge. Assy Diouf, a citizen and native of the Republic of Congo, petitions

for review of the Board of Immigration Appeals' ("BIA") decision affirming the Immigration

Judge's ("IJ") denial of her application for asylum, withholding of removal, and protection under the

Convention Against Torture ("CAT"). For the reasons set forth below, we dismiss Diouf's asylum

claim and deny her petition.

I.

While the Republic of Congo was in the throws of a civil war, Diouf alleges that rebels

stormed her house, raped her, and beat her family. Although she and her family then moved to a

---

[*]The Honorable Solomon Oliver, Jr., United States District Judge for the Northern District
of Ohio, sitting by designation.

different part of the same region, rebels attacked again two years later, raping Diouf, murdering her father, and fatally injuring her mother. From a refugee camp in Zaire, Diouf managed to enter the United States using a false passport. After arriving in New York, a man named Seydou Sy drove her to Ohio and helped her fill out an asylum application.

An unfavorable ruling resulted. In the absence of corroborating evidence regarding her arrival date—together with adverse credibility findings—the IJ held that Diouf failed to establish a timely filing and therefore denied the asylum petition. The IJ also rejected her claims of persecution as not credible. In addition to noting an unresponsive and insincere demeanor, the IJ identified multiple contradictions in Diouf's story: she provided four different dates on which she claimed her father was killed; she indicated at one point that she had no siblings, but later claimed that rebels raped her brother during an attack; and she inconsistently testified about her father's injuries and the number of times she was raped. Although Diouf insists that Sy bears responsibility for the miscues, she confirmed under oath that her applications were accurate and that Sy read the original asylum application back to her before she signed it. The IJ also alternatively found that Diouf failed to show persecution on account of a protected ground or that she could not relocate safely within the Republic of Congo.[1] The BIA affirmed, and Diouf petitioned for review.

---

[1]Because we uphold the adverse-credibility determination, we do not address the IJ's alternative ruling that Diouf failed to demonstrate persecution based on a protected ground or an inability to relocate.

II.

A.

"Where the Board affirms the IJ's ruling but adds its own comments, we review both the IJ's decision and the Board's additional remarks." *Karimijanaki v. Holder*, 579 F.3d 710, 714 (6th Cir. 2009). "Credibility determinations are considered findings of fact, and are reviewed under the substantial evidence standard." *Sylla v. INS*, 388 F.3d 924, 925 (6th Cir. 2004). "'Under this deferential standard, the court may not reverse the Board's determination simply because we would have decided the matter differently.'" *Zhao v. Holder*, 569 F.3d 238, 247 (6th Cir. 2009) (quoting *Koulibaly v. Mukasey*, 541 F.3d 613, 619 (6th Cir. 2008)). We "reverse only if the decision was manifestly contrary to law, that is, if the evidence not only supports a contrary conclusion, but indeed *compels* it." *Haider v. Holder*, 595 F.3d 276, 281 (6th Cir. 2010) (quotation marks and citations omitted).

B.

We first dispense with Diouf's asylum request on jurisdictional grounds. This court lacks authority to review "asylum applications denied for untimeliness . . . when the appeal seeks review of discretionary or factual questions." *Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir. 2006). Because Diouf does not raise any constitutional or statutory issues concerning timeliness, only her requests for withholding of removal and protection under the CAT are before this court. *See id.*

C.

To prevail on a petition for withholding of removal, Diouf must show a clear probability that removal to the Republic of Congo would subject her to persecution on account of membership in a protected category, which she can demonstrate through a claim of past persecution. *Id.* at 749–50. For CAT protection, Diouf "bears the burden of establishing it is more likely than not that . . . she would be tortured if removed to the proposed country of removal." *Id.* at 749 (quotation marks and citations omitted). The IJ rejected Diouf's claim of past persecution and torture upon finding her not credible. Diouf disputes this adverse-credibility finding. Because Diouf filed her application before the REAL ID Act of 2005 took effect, Pub. L. 109-13, 119 Stat. 231, the "adverse credibility finding must be based on issues that go to the heart of the applicant's claim. They cannot be based on an irrelevant inconsistency. If discrepancies cannot be viewed as attempts by the applicant to enhance [her] claims of persecution, they have no bearing on credibility." *Sylla*, 388 F.3d at 926 (quotation marks and citations omitted).

In assessing Diouf's credibility, the IJ found that "the respondent's demeanor on the witness stand is not suggestive of one who is being candid," and described her as "[f]requently non-responsive." Specifically, Diouf repeatedly evaded questions from both her own counsel and the Government. We accord this type of finding great deference. *See Diallo v. Holder*, 312 F. App'x 790, 801 (6th Cir. 2009) ("The IJ is in the best position to determine credibility based on the demeanor of the witness and the presentation of testimony."); *see also Paramasamy v. Ashcroft*, 295

F.3d 1047, 1050 (9th Cir. 2002) (Courts "accord credibility findings, and particularly the IJ's demeanor findings, substantial deference."). Diouf contends that a lack of education and the stress of formal proceedings accounted for her unresponsiveness. Although this explanation might seem plausible, it does not "meet the high standard of *compelling* a contrary result." *Yu v. Ashcroft*, 364 F.3d 700, 704 (6th Cir. 2004). Moreover, the IJ posed simple questions, and Diouf never claimed that she could not understand them—she simply was unresponsive.

Additionally, underpinning the credibility determination, the IJ identified multiple inconsistencies relating to Diouf's alleged suffering in the Republic of Congo that went to the heart of her claim. She provided conflicting dates of her father's death during the persecution that allegedly motivated her departure from the Republic of Congo. Diouf's initial application listed 1999, a later application September 8, 2000, and her personal statement yet another date, September 15, 2000. On this point too, her testimony varied. She first testified that he was killed on September 21, 2000, but on cross-examination returned to the September 8 date. Diouf blamed Sy for the erroneous date in her original application. But Diouf confirmed that document's accuracy during her testimony. And during her hearing she inadequately addressed these conflicts.

The IJ's adverse credibility ruling also relied on Diouf's conflicting statements concerning the number of times that she claims to have been raped. Although she testified that she was raped twice and made the same claim during her interview with the asylum officer, her original asylum application reported that she was raped on a daily basis during the civil unrest and that she was raped

an additional time in Zaire. Once again, Diouf blames the man who helped her fill out the asylum application—an application whose accuracy she confirmed under oath.

Similarly, Diouf faults the IJ for relying on discrepancies regarding her siblings. Although her original asylum application stated that she had no siblings, she testified that she had multiple siblings, one of whom was raped during an attack. Here, too, Diouf unsuccessfully blames Sy for erroneously completing her application and describes the inconsistencies as minor. But discrepancies concerning the sexual assaults on Diouf and her brother go to the heart of her claim—the harm allegedly inflicted by Congo rebels.

Diouf also claims that the IJ erroneously interpreted her testimony about her father's injuries. But even if the IJ erred here, the other discrepancies justify his adverse-credibility determination. *See Vasha v. Gonzales*, 410 F.3d 863, 869–72 (6th Cir. 2005) (IJ's inclusion of "several additional inconsistencies, which were unsupported by the record," does not undermine credibility ruling where others go to the heart of the claim).

Because Diouf provided no corroboration, her own credibility was critical. Rather than finding Diouf not credible because she failed to corroborate her claims, as her brief suggests, the IJ reasoned that without credible testimony or documentary evidence to corroborate her claims, Diouf failed to meet her burden of proof. Thus, because the IJ found Diouf not credible due to inconsistencies that went to the heart of her claim, she failed to show a clear probability of persecution or torture if returned to her home country.

III.

Accordingly, we dismiss Diouf's asylum claim and deny her petition.