NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0613n.06

No. 15-3426

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Nov 18, 2016
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| ARTAN SULCE, et al., | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| LORETTA E. LYNCH, U.S. Attorney | ) | APPEALS |
| General, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

BEFORE: NORRIS, GIBBONS, and ROGERS, Circuit Judges.

PER CURIAM. Artan Sulce, his wife Lindita Sulce, and their two sons petition this court for review of an order of the Board of Immigration Appeals (BIA) dismissing their appeal from the denial of their applications for asylum, withholding of removal, and protection under the Convention Against Torture (CAT).

The Sulces, natives and citizens of Albania, most recently entered the United States in 2004 with non-immigrant G-1 visas as the staff and family members of a representative of a foreign government to an international organization, authorized to remain until July 30, 2005. Artan Sulce worked as a driver and bodyguard for the Albanian ambassador to the United Nations until 2005; the Sulces did not depart the United States after his employment ended. In 2010, the Sulces submitted applications for asylum, withholding of removal, and CAT protection. The Department of Homeland Security subsequently served the Sulces with notices to appear in removal proceedings, charging them with removability as aliens who, after

admission as a non-immigrant, remained in the United States for a time longer than permitted. *See* 8 U.S.C. § 1227(a)(1)(B). Appearing before an immigration judge (IJ), the Sulces conceded removability as charged.

At the merits hearing, Artan Sulce testified about three threatening incidents that occurred while he was visiting Albania. On June 21, 2002, Artan Sulce was dining at a restaurant with his brother and two friends when three people from a nearby table approached them. One of them asked Artan Sulce, "Have you returned as a visitor or did the embassy send you back?" When Artan Sulce asked the man to introduce himself, the man responded in a threatening tone, "It's none of your business as to who we are. You will find out who we are." During that same visit, on July 7, 2002, two people, one of whom was the man from the restaurant, approached Artan Sulce on the street, called him by name, referred to his work for the foreign affairs minister, threatened to "blow [his] brains out," and left stating, "We will revisit your case again." Artan Sulce reported this incident to the police but returned to the United States three days later. Artan Sulce visited Albania again in November 2004. While Artan Sulce was returning home one evening, four people, one of whom was wearing a mask, surrounded him and threatened to kill him. They told him, "To you and those whom you have served, we will send you where you belong very quickly." The masked person stopped one of them from hitting Artan Sulce and said, "Hold on. We will . . . take care of him once and for all." According to Artan Sulce, these people threatened him because he witnessed two men firing machine guns when he was driving a government car past the Democratic Party headquarters on September 12, 1998. After he drove away and later picked up the foreign affairs minister, Artan Sulce learned that the leader of the Democratic Party had been assassinated near the headquarters building. Artan Sulce testified that he fears returning to Albania because of what he witnessed.

At the conclusion of the merits hearing, the IJ denied the Sulces' applications for asylum, withholding of removal, and CAT protection. The IJ pretermitted their asylum applications on the basis that they failed to file their applications within one year of their last arrival in the United States. *See* 8 U.S.C. § 1158(a)(2)(B). The IJ went on to find that the Sulces lacked credibility and therefore failed to satisfy their burdens of proof. In the alternative, the IJ found that the Sulces failed to establish a nexus to a protected ground and failed to show that it is more likely than not that they would be tortured if removed to Albania.

The Sulces appealed the IJ's decision. Dismissing their appeal, the BIA affirmed the IJ's findings that the Sulces' asylum applications were untimely, that they lacked credibility, and that their claims were not tied to a protected ground.

This timely petition for review followed. Where, as here, "the BIA reviews the immigration judge's decision and issues a separate opinion, rather than summarily affirming the immigration judge's decision, we review the BIA's decision as the final agency determination." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). To the extent that the BIA adopted the IJ's reasoning, we also review the IJ's decision. *Id.* We review the agency's factual findings, including credibility determinations, for substantial evidence, reversing only if "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see Yu v. Ashcroft*, 364 F.3d 700, 703 (6th Cir. 2004).

We lack jurisdiction to review asylum applications denied for untimeliness "when the appeal seeks review of discretionary or factual questions, but not when the appeal seeks review of constitutional claims or matters of statutory construction." *Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir. 2006); *see* 8 U.S.C. § 1158(a)(3). The Sulces have made no argument regarding the timeliness of their asylum applications—let alone raised a constitutional claim or

matter of statutory construction—and have therefore waived the issue. *See Cruz-Samayoa v. Holder*, 607 F.3d 1145, 1155 (6th Cir. 2010).

Substantial evidence supports the agency's adverse credibility determination. "Under the REAL ID Act, credibility determinations are based on the 'totality of the circumstances' and should take into account 'all relevant factors.'" *Hachem v. Holder*, 656 F.3d 430, 434 (6th Cir. 2011) (quoting 8 U.S.C. § 1158(b)(1)(B)(iii)). The REAL ID Act allows triers of fact to consider any inconsistencies, inaccuracies, or falsehoods in an applicant's statements, "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii).

Contrary to the Sulces' argument, the IJ explained the adverse credibility determination, giving specific examples. Artan Sulce testified that he made a police report after the 2002 incidents and that he attempted to obtain that report when he returned to Albania in 2004. As the IJ pointed out, Artan Sulce failed to mention his attempt to obtain the police report in his written application. The IJ found that Artan Sulce's "incredibility is further heightened by the letter from his own brother." Although the brother's letter addressed the restaurant incident in 2002, the letter made no mention of the Democratic Party leader's assassination in 1998, which forms the basis for Artan Sulce's claimed fear of harm. In addition, the IJ found that Lindita Sulce lied under oath. Lindita Sulce testified that she returned to Albania two times, once in 2001 and again in 2002, failing to mention her third visit in 2004 until she was impeached by the government with her written application. When asked to explain her omission of the third trip, Lindita Sulce merely stated, "I only went with my kids." The IJ questioned why Lindita Sulce returned to Albania with her children after her husband had purportedly been threatened.

The Sulces argue that the IJ mistakenly equated their failure to produce the police report with a lack of credibility. Although the IJ noted that the Sulces failed to show that they made any other attempts to obtain the police report, that failure was not the sole basis for the adverse credibility determination. Given the inconsistencies identified by the IJ and the lack of corroboration, the record does not compel a conclusion contrary to the agency's adverse credibility determination. That determination is fatal to the Sulces' claims for asylum, withholding of removal, and CAT protection. *See El-Moussa v. Holder*, 569 F.3d 250, 256 (6th Cir. 2009).

The Sulces do not address the agency's alternative findings that they failed to establish a nexus to a protected ground and that they failed to satisfy their burden of proof for CAT protection. The Sulces have therefore waived any challenge to these findings, which are dispositive of their claims. *See Hachem*, 646 F.3d at 434; *Al-Najar v. Mukasey*, 515 F.3d 708, 717 (6th Cir. 2008).

For the foregoing reasons, we **DENY** the Sulces' petition for review.