NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0837n.06
Filed: November 15, 2006

Case No. 05-3679

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| BAHARE ABLAHAD ODISHO, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| ALBERTO GONZALES, Attorney General, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| | ) | |

BEFORE: BATCHELDER, GIBBONS, and COOK, Circuit Judges.

ALICE M. BATCHELDER, Circuit Judge. Petitioner-appellant, Bahare Ablahad Odisho

("Odisho"), a native and citizen of Iraq, appeals a final order of removal by the Board of Immigration

Appeals ("BIA" or "Board"). The BIA affirmed, without opinion, the Immigration Judge's ("IJ")

decision denying Odisho's request for asylum, withholding of removal, and protection under the

Convention Against Torture ("CAT"). Odisho timely filed her petition for review.

I. BACKGROUND

Odisho, a 39 year old, Christian Chaldean woman from northern Iraq, entered the United

States illegally near San Diego, California, on or about March 4, 2002. On March 7, 2002, the INS

issued Odisho a Notice to Appear, charging her with removability under INA § 212(a)(7)(A)(i)(I),

1

8 U.S.C. 1182(a)(7)(A)(i)(I), as an alien not in possession of valid entry documents. After an initial hearing in San Diego, Odisho filed a motion to change venue to Detroit, Michigan. She conceded removability and applied for asylum, withholding of removal, and CAT protection. The IJ granted Odisho's change of venue motion, and the case proceeded in Detroit. On January 9, 2004, the IJ denied Odisho's applications for asylum and withholding of removal.

At her removal hearing, Odisho testified that in the 1970s the Kurds accused her native village of Kwami of cooperating with Saddam Hussein's regime, and that Saddam Hussein accused the village of aiding the Kurds. Odisho stated that Hussein attacked Kwami, and she and her family fled to Baghdad. She testified that her father was harassed by members of Hussein's Ba'ath Party while the family lived in Baghdad, and that while living there in the early 1990s, she was unable to obtain work for more than a year because she was not a member of the Ba'ath Party. Odisho also testified that after obtaining work as a seamstress in Baghdad, she was persecuted by "Muslim radicals" and ultimately fired.

On October 14, 1996, the Ba'ath Party summoned Odisho to its offices where she was then detained for 12 days while officials interrogated her 4 times as they investigated claims by "Muslim radicals" that she had cursed the Ba'ath Party. Odisho claimed that during the interrogations she was "sexually fondled" and beaten on her back, shoulders, and feet. Her interrogators released her on October 26, 1996, after she signed an affidavit pledging her loyalty to the regime and promising that she would not cooperate with or assist any anti-government organization.

After her detention, Odisho lost her job when the Ba'athists pressured her factory boss to fire her. She did not find another job but made plans to marry Yousef Hermis. Mr. Hermis was involved with the Assyrian Democratic Movement, or "ADM party," outlawed by Hussein. Odisho testified

2

that Hermis and one of his friends were arrested on August 27, 1997, and he disappeared. She stated that after her fiance's disappearance, she feared that she would be executed because she had signed the loyalty agreement and was engaged to an arrested member of an anti-government party. Odisho fled Baghdad on September 1, 1997.

Odisho then moved to and lived in several countries as an illegal alien over the next several years. She was smuggled into Turkey, where she stayed for a month, before moving to Greece. While in Greece, Odisho worked and applied for asylum in Canada through the Canadian embassy, but her application was denied. She also claimed that she tried to apply for "status in the United States" through an unidentified American organization in Greece, but that the organization indicated that it required affidavits establishing her relationship with someone in the United States, and that her having a sister living in the States was insufficient. Odisho remained in Greece illegally for 4 years before paying $7500 to be smuggled into Mexico on a false Danish passport. Her sister and aunt supplied the smugglers' fee. Once in Mexico, Odisho was arrested and placed in a camp in Tijuana after the September 11, 2001 attacks. Upon release, she crossed the border and entered the United States in March 2002. She was detained in California and her removal proceedings ensued.

## II. THE IMMIGRATION JUDGE'S OPINION

The Immigration Judge looked to the "threshhold determination regarding [the] respondent's credibility" and noted that "[s]ometimes a respondent can offer only their testimony as the sole evidence in support of the claim. This can be sufficient where the testimony is believable, consistent, AND sufficiently detailed in light of general conditions in the home country to provide a plausible and coherent account of the basis for the claimed fear." (emphasis in original). The IJ went on to observe that the only evidence corroborating the details of Odisho's claims of persecution

is a letter purportedly from her brother who now resides in Toronto, Canada. That letter appears to have been based on information that Odisho provided to its author, and the IJ gave it little weight.

The IJ also discussed Odisho's application and the inconsistencies between her testimony and her application. First, the IJ noted that although Odisho testified to the Hussein regime's harassing her family and accusing them of anti-government activities as early as the 1970s, she did not include any of that information in her asylum application. Second, the IJ was "troubled" by the relatively incomplete set of records and documents that Odisho provided to corroborate her story. Third, the IJ considered Odisho's extended stay in Greece, and the fact that she could not provide any evidence of her stay, the Danish passport she used to leave Greece, or any affidavit from her sister still living there. The IJ suggested that if Odisho could provide the fraudulent Danish passport or an affidavit from her sister, there could be at least an inference to support her claim of lack of status in that country. Fourth, the IJ noted that the fear of persecution Odisho initially articulated in her application is based on treatment by the former government, but that she now claims that she fears persecution by "Muslim extremists and fundamentalists." The IJ concluded that Odisho had not submitted credible and objective evidence of such persecution so as to establish a well-founded fear of future persecution in Iraq.

Ultimately, the IJ held that Odisho's single claim of detention did not rise to the level of past persecution or support a well-founded fear of future persecution under the new circumstances in Iraq. Having failed to establish a well-founded fear of future persecution, Odisho also failed to establish eligibility under the more stringent standards for withholding of removal.

## III. ANALYSIS

4

Because the BIA adopted the IJ's determination without opinion, we review the IJ's opinion as the final agency decision. *Denko v. INS*, 351 F.3d 717, 728 (6th Cir. 2003). To reverse the decision, we must find that the evidence not only supports a contrary conclusion, but compels it. *Klawitter v. INS*, 970 F. 2d 149, 152 (6th Cir. 1992). "The petitioner must demonstrate 'that the evidence presented was so compelling that no reasonable factfinder could fail to find the requisite persecution or fear of persecution.'" *Gilaj v. Gonzales*, 408 F.3d 275, 283 (6th Cir. 2005) (quoting *Ouda v. INS*, 324 F.3d 445, 451 (6th Cir. 2003)). This standard has been codified by regulations that allow us to reverse the BIA only if "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. 1252(b)(4)(B). Under this deferential standard of review, we must uphold the IJ's decision if it is "'supported by reasonable, substantial, and probative evidence on the record considered as a whole,'" *Koliada v. INS*, 259 F.3d 482, 486 (6th Cir.2001) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)), and we are not entitled to reverse "simply because [we are] convinced that [we] would have decided the case differently." *Adhiyappa v. INS*, 58 F.3d 261, 265 (6th Cir.1995) (internal quotation marks omitted).

Because substantial evidence supports the IJ's determination and the evidence does not compel the reasonable factfinder to conclude otherwise, we AFFIRM.

### A. CREDIBILITY AND PAST PERSECUTION

Odisho argues that the IJ abused her discretion in denying Odisho's applications for asylum and withholding of removal. Odisho claims that she has suffered past persecution on account of her religion and her opinions, and that there is a reasonable possibility that she will suffer future harm if she is removed to Iraq. She suggests that the IJ failed to consider the 2001 and 2002 Country Reports and to consider all of the evidence and testimony in the context of the "composite picture"

5

that Odisho painted. Furthermore, Odisho contends that because her testimony was "not found to be incredible," the IJ should have granted her application for asylum based upon her testimony.

In fact, however, the IJ's opinion strongly implies that Odisho did not provide credible evidence to support her application. In discussing the "threshold determination *regarding respondent's credibility*," (emphasis added) the IJ points to the little weight to be given to the letter from Odisho's brother, the multiple inconsistencies between her testimony and her asylum application, the incomplete record evidence provided relating to the Canadian application, the lack of evidentiary support coming from her sister and mother who purportedly paid over $7000 to smuggle her into the United States, and the missing Danish passport. Each of these inconsistencies and the lack of credible evidence presented at Odisho's hearing were discussed in relation to Odisho's credibility determination. It is therefore misleading to argue that Odisho was found to have testified credibly.

To the extent that the IJ considered Odisho's testimony not credible, we review adverse credibility determinations under the substantial evidence test, *Yu v. Ashcroft*, 364 F.3d 700, 703 (6th Cir. 2004), which allows for reversal only if "the evidence presented by [the petitioner] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." *Elias-Zacarias*, 502 U.S. at 481. Despite this highly deferential standard of review, an "adverse credibility determination 'must be based on issues that go to the heart of the applicant's claim.'" *Shkabari v. Gonzales*, 427 F.3d 324, 329 (6th Cir. 2005). Here, the issues underlying the IJ's credibility determination concern the lack of evidence and the inconsistencies regarding Odisho's entire story. The IJ doubts the reliability of Odisho's testimony in light of its inconsistencies and the conspicuous

6

absence of any corroborating evidence that would likely be available if Odisho's story was truthful. The evidence presented does not compel a contrary conclusion.

Furthermore, Odisho's brief misrepresents the IJ's finding as to whether Odisho's treatment constituted past persecution. She argues incorrectly that the IJ "never held as to whether such abuse constitutes persecution," and "[n]owhere does the IJ decide whether what . . . Odisho endured was persecution, mistreatment not rising to persecution, misfortune, or just bad luck." On the contrary, however, after reviewing the basis for Odisho's claim, the IJ specifically determined that it "cannot find that the respondent has, based upon her single claim of detention for a brief period by a government which no longer exists, credibly established either past persecution or a well-founded fear of future persecution given the changed circumstances." Furthermore, the IJ held that "[t]here is certainly no evidence to establish that the respondent's persecution was so severe as that experienced by the respondent in *Matter of Chen*, that there is a reason that the respondent should be granted relief in this country." Thus, it is simply not accurate to say that the IJ never ruled on the question of past persecution.

Rather, the IJ correctly held that Odisho's single claim of detention, the sexual touching, and the beating on the feet and shoulders, does not rise to the level of past persecution. Persecution does not include all types of suffering and "must rise above unpleasantness, harassment, and even basic suffering." *Nelson v. INS*, 232 F.3d 258, 263 (1st Cir. 2000). Because neither the supporting evidence nor Odisho's testimony compel the conclusion that her treatment at the hands of the Ba'athists was more than basic suffering, we affirm the IJ's decision.

## B. FEAR OF FUTURE PERSECUTION

Odisho also argues that the IJ erred in finding that Odisho failed to establish a well-founded fear of future persecution. As the IJ noted, in light of the recent overthrow of Saddam Hussein's Ba'athist regime, her original "persecutors," Odisho "now claims that she fears persecution by Muslim extremists and fundamentalists." Odisho relies on television and news accounts reporting that the Ba'ath Party has reorganized into small cells and continues to terrorize the country. She claims that she was known to local Ba'ath Party members in Iraq and she fears retaliation. Odisho argues that she is known in her neighborhood and by her friends and relatives who will "all betray her as an Assyrian/Chaldean Christian" if she returns. She contends that the IJ "cavalierly dismissed" this fear and that the fear should be "adjudicated on real evidence." In fact, however, in looking for real evidence to support Odisho's claim, the IJ found that Odisho "has not submitted credible and objective evidence of such persecution" to establish a well-founded fear. Rather, Odisho's "evidence" consisted of generalized media accounts conveying a sense of turmoil and danger in Iraq. We have held that random danger faced by the population as a whole does not establish asylum eligibility. *See Daneshvar v. Ashcroft*, 355 F.3d 615, 624-25 (6th Cir. 2004). Furthermore, Odisho "cannot rely on speculative conclusions or mere assertions of fear of possible persecution, but instead must offer reasonably specific information showing a real threat of individual persecution . . . . The feared persecution must relate to the alien individually, not to the population generally." *Harchenko v. INS*, 379 F.3d 405, 410 (6th Cir. 2004). Odisho proferred no specific information, or evidence of individual persecution.

Moreover, given the U.S.-led overthrow of Iraq's dictator, and despite the general state of violence and unrest in Iraq, the IJ rightly noted that Odisho has not established that it was more likely than not that she would be tortured or persecuted by the Iraqi government, or by a group in whose

8

practices of torture the government acquiesces. As the IJ found, there is no evidence in these records to support a claim that the group responsible for enforcing the law in Iraq acquiesces in actions by any radical Muslim, fundamentalist group. Indeed, the contrary would seem to be the case. Thus, Odisho has failed to establish a fear of future persecution, and substantial evidence supports the IJ's determination to that effect.

## CONCLUSION

Accordingly, we **AFFIRM** the judgment of the BIA.