NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0524n.06
Filed: July 25, 2007

No. 05-4457

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| LOUAY ADIB ABLAHAD, | ) | |
| | ) | |
| Petitioner, | ) | ON PETITION FOR REVIEW |
| | ) | OF AN ORDER OF THE |
| v. | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| ALBERTO GONZALES, Attorney General, | ) | |
| | ) | |
| Respondent. | ) | |

_____

BEFORE: GILMAN, GIBBONS and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Petitioner Louay Adib Ablahad ("petitioner") seeks judicial review of a final order of the

Board of Immigration Appeals ("BIA") affirming an immigration judge's (the "IJ") decision denying

his applications for asylum, withholding of removal, and relief under the Convention Against

Torture,[1] and ordering him removed to Iraq. For the reasons set forth below, we deny the petition

for review.

Petitioner Ablahad, a forty-year-old native and citizen of Iraq, entered the United States on

December 11, 2000, on an H-1B specialty occupation worker visa. The visa authorized petitioner

to remain in the United States for a temporary period not to exceed January 7, 2002. Petitioner

_____

[1]United Nations Convention Against Torture and Other Cruel, Inhumane or Degrading
Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85; 8 C.F.R. § 208.18.

remained in the United States beyond his authorized stay, thus leading the Department of Homeland Security ("DHS") to commence removal proceedings against him with the filing of a Notice to Appear in the immigration court on June 19, 2003. Petitioner was charged with being removable under section 237(a)(1)(B) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(B), for remaining in this country longer than permitted.

On February 10, 2004, petitioner filed his asylum application with the immigration court. Petitioner conceded removability, but in addition to asylum, he sought withholding of removal, protection under the CAT, and, in the alternative, voluntary departure.

On July 6, 2004, the IJ conducted a hearing on the merits of Ablahad's claims for relief. At the removal hearing, petitioner testified that he was born in Baghdad, Iraq, on June 1, 1967. He was educated at the University of Technology in Baghdad and, after receiving a degree in system engineering, Ablahad managed the family business, an automobile body shop located in Baghdad, from approximately 1993 to 2000. Petitioner testified that his family was prominent because they were Syrian Christians and owned the largest body shop in Iraq. Ablahad admitted that he and his family successfully avoided persecution by the government, then the regime of Saddam Hussein, by refusing to discuss the regime or express political viewpoints of any kind.

Ablahad's asylum claim centered upon his fear of future persecution if forced to return to Iraq. Petitioner conceded that his asylum application was filed after the one-year filing deadline set forth in 8 U.S.C. § 1158(a)(2)(B), but he nonetheless argued that his application should be considered because of "the existence of changed circumstances which materially affect[ed] [his]

eligibility for asylum." 8 U.S.C. § 1158(a)(2)(D); 8 C.F.R. § 1208.4(a)(4). Petitioner explained that, although he left Iraq on his employment visa without incident and with authorization from the Iraqi government, he was scared to now return because he is a Christian from a well-known family that owned a big business: "If I go now there's a lot of people, they are going to take advantage of that [and] probably kill me, try to get money from me and this is very normal right now." Given his time spent in the United States, he believed that he would be targeted by anti-American and anti-Christian individuals.

In his asylum application and at the removal hearing, Ablahad cited several discrete examples of individuals, allegedly known to him, who were targeted by insurgents in Iraq. These events were relayed to petitioner through telephone conversations with his friends and family. Petitioner testified that his cousin's Christian husband was shot leaving his office at night; a close Christian friend was kidnaped on two separate occasions, released for money, and then fled to Jordan; and a physician acquaintance was kidnaped when he returned to Iraq from Canada in order to sell his property.

In addition to his own testimony, petitioner proffered an unsworn, undated letter from an American military officer from the Army's 4th Infantry Division, Fort Hood, Texas, who had recently served in Iraq as an Executive Officer. Because the officer was unable to obtain leave to attend petitioner's removal hearing, he submitted a written statement regarding his recent experiences and observations in the Sunni Triangle. His letter described attacks against individuals in Iraq who cooperated with the United States armed forces or who were perceived as cooperating with the United States and the coalition government. The officer opined that "it is because of the

precise nature of [petitioner's] religion, pro-American sentiments, his American family, and his presence here, that he is in grave danger should he be forced to return to Iraq."

Petitioner also submitted documentary evidence, in the form of numerous newspaper articles and Department of State country reports on Iraq, purportedly demonstrating that Christian Iraqis similarly situated to petitioner have been exposed to extreme danger from radical, uncontrolled, Muslim extremist groups in Iraq. The articles included one about the bombing of a Christian-owned restaurant, as well as a letter from a minister at petitioner's church in the United States concerning a January 2004 memorial mass for petitioner's second cousin, who was shot and killed in Baghdad while driving home from the hospital. Although the country reports indicated that some Christians and churches have been subject to assaults and bombings by insurgents, radical Muslims, and criminals, these reports did not attribute such activities to governmental forces or any groups acting on behalf of the government.

When questioned by the IJ about his family, petitioner testified that, following the death of his father in 1998, his mother permanently moved to Michigan in December 2003. Petitioner's sister, brother, and several other relatives also now reside in the United States. Other extended family members, including two aunts, two uncles, and petitioner's cousins, still live in Iraq. However, petitioner did not call any family members to testify at his removal hearing.

Ablahad testified that he served in the Iraqi military for eighteen months, although this service was not listed on his application for asylum because he was not asked about this subject. He acknowledged, consistent with his application, that he had never belonged to a political party,

student group, labor union, religious organization, or military/paramilitary organization in his home country. The sole organization to which he professed membership on his asylum application was the Orthodox Christian Church.

At the conclusion of the hearing, the IJ issued his oral decision denying petitioner's applications for asylum, withholding of removal, protection under the CAT, and voluntary departure. Specifically, the IJ refused to consider petitioner's asylum application because it was not filed within the one-year filing deadline, 8 U.S.C. § 1158(a)(2)(B), and petitioner otherwise failed to demonstrate adequately that the "changed circumstances" exception to the deadline should apply.[2] The IJ opined that, even assuming arguendo petitioner's asylum application was filed in a timely manner, the application should be denied on the merits because petitioner failed to demonstrate that he had a well-founded fear of future persecution:

> [R]espondent claims that much of what would happen to him would be because he comes from a well known Christian family who is monied and owned a very large body shop in Iraq that often performs services for what he called very important people or VIPs. Now, the Court notes that the respondent has not demonstrated through any evidence other than his own testimony that his family owned this body shop, that his family was well known, or that his family was well-to-do. In any event, the respondent has not demonstrated through any evidence that he belongs to a group of persons that is currently subject to a pattern or practice of persecution and

---

[2]In this regard, the IJ found that petitioner "never identified what incident or discrete event actually triggered the fear that he now has and where he arrived at the conclusion that he could not return to Iraq." The IJ noted that "even though [petitioner] came here to work on a work visa, he could not remember the entity that he work[ed] for. . . ." The IJ also took note of a "pattern of immigration [by petitioner's family] to the United States from Iraq that is totally unrelated to political matters or his being fearful," leading the IJ to conclude that petitioner failed to demonstrate that he had filed his asylum application within a reasonable period of time given the so-called changed circumstances.

he certainly hasn't established his own inclusion in [and] identification with such group of persons such as his fear of persecution upon return is reasonable.

The IJ concluded further that petitioner's withholding of removal and CAT claims were similarly unmeritorious under the requisite standards, holding that petitioner had not demonstrated that it is more likely than not he will be the target of persecution in the future on the basis of any of the statutorily protected categories or that he would be in fear of severe harm or torture from government forces if he returns to Iraq. The IJ dismissed petitioner's claims as being based, at most, upon generalized fears of harm stemming from the civil strife in Iraq, not tantamount to the particularized persecution required under the INA, and cited petitioner's failure to corroborate his claims. According to the IJ, Ablahad's proffered examples of family members and friends who experienced harm or mistreatment in the past had more to do with being targeted for money rather than for political or religious beliefs. The IJ thus concluded that Ablahad "certainly hasn't demonstrated a well-founded fear, objectively or subjectively, of future persecution and he certainly hasn't demonstrated that it's more like[ly] than not he would be persecuted or tortured if he were to return to today's Iraq."

On October 20, 2005, the BIA issued a brief per curiam order adopting and affirming the decision of the IJ and dismissing petitioner's appeal. Ablahad now petitions this court for review of the BIA's order.

I.

First, petitioner challenges the IJ's refusal to consider his admittedly untimely asylum application on the ground that "changed circumstances" warrant its consideration. An alien applying

for asylum must demonstrate "by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." 8 U.S.C. §1158(a)(2)(B). The one-year deadline is inapplicable, however, "if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within the [one year] period. . . ." 8 U.S.C. § 1158(a)(2)(D). Such circumstances include "[c]hanges in conditions in the applicant's country of nationality," "changes in applicable U.S. law," and "activities the applicant becomes involved in outside the country of feared persecution that place the applicant at risk. . . ." 8 C.F.R. §§ 1208.4(a)(4)(i)(A) and (B). If an IJ determines that the alien has established that "changed circumstances" exist, then the alien must also show that the asylum application was filed within a reasonable period given those changed circumstances. 8 C.F.R. § 1208.4(a)(4)(ii).

In this case, we are without jurisdiction to review the IJ's determination that petitioner filed an untimely asylum application and that he otherwise failed to demonstrate the existence of changed circumstances that would invoke an exception to the filing deadline.

The INA provides that "[n]o court shall have jurisdiction to review any determination of the Attorney General under paragraph (2) [regarding the one-year deadline and the allowance for an exception to the one-year deadline]." 8 U.S.C. § 1158(a)(3). In accordance with this statute, we are thus "barred from reviewing the BIA's decision denying [an alien's] application on the basis that it was untimely and must therefore affirm the BIA's decision on this point." *Castellano-Chacon v.*

*INS*, 341 F.3d 533, 544 (6th Cir. 2003). Following the recent enactment of the Real ID Act of 2005, Pub. L. 109-13, 119 Stat. 231 (May 11, 2005), we "modifi[ed] the holding of *Castellano-Chacon* to bar our review of asylum applications denied for untimeliness only when the appeal seeks review of discretionary or factual questions, but not when the appeal seeks review of constitutional claims or matters of statutory construction." *Almuhtaseb v. Gonzales*, 453 F.3d 743, 747 (6th Cir. 2006).[3]

Here, petitioner does not raise colorable constitutional or legal challenges to the denial of his asylum application. Rather, Ablahad's claim before the BIA, and now this court, is that the IJ erred in determining that he failed to sufficiently demonstrate the existence of changed circumstances pursuant to § 1158(a)(2)(D). Faced with a similar claim in *Almuhtaseb*, we noted that "[t]he existence of 'changed circumstances' that materially affect eligibility for asylum is a predominantly factual determination, which will invariably turn on the facts of a given case." *Id.* at 748 (internal citation omitted). Consequently, "[b]ecause [the applicant's] claim relies on contesting these sorts of factual determinations rather than on statutory construction or a constitutional claim, we are

_____

[3]The REAL ID Act made petitions for review the exclusive means of judicial review for all orders of removal, with a very narrow exception providing for habeas review of expedited removal orders. *Almuhtaseb*, 453 F.3d at 747. As we further noted, "[t]he REAL ID Act § 106(a)(1)(A)(iii) amends § 242 of the INA so that the Code now provides that 'nothing . . . in any . . . provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of *constitutional claims* or *questions of law* raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.'" *Id.* at 747 (quoting 8 U.S.C. § 1252(a)(2)(D)). Consistent with this amendment, the holding of *Castellano-Chacon* was modified.

without jurisdiction to review the BIA's determination denying [him] asylum." *Id*. For these same

reasons, judicial review of Ablahad's belated asylum application is precluded.[4]

II.

Petitioner's remaining arguments center upon the denial of his application for withholding

of removal pursuant to § 241(b)(3) of the INA,[5] which provides that "the Attorney General may not

remove an alien to a country if the Attorney General decides that the alien's life or freedom would

be threatened in that country because of the alien's race, religion, nationality, membership in a

particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); *see also Singh v. Ashcroft*,

398 F.3d 396, 401 (6th Cir. 2005) ("withholding of removal is mandatory" if an alien establishes that

his life or freedom would be threatened in his home country on account of one of the five

enumerated categories).

The applicant must demonstrate a clear probability of persecution upon removal; in other

words, this burden of proof requires a showing that "it is more likely than not" that the applicant will

be persecuted on the basis of one of the five protected categories upon return. 8 C.F.R.

§ 1208.16(b)(2); *Singh*, 398 F.3d at 401. An applicant who has not shown past persecution may be

entitled to withholding of removal if he can demonstrate a future threat to his life or freedom on a

---

[4]However, this court's lack of jurisdiction to entertain the asylum application does not foreclose review of petitioner's claim for withholding of removal. *See Castellano-Chacon*, 341 F.3d at 543-44.

[5]Although Ablahad also originally sought withholding of removal under the CAT and voluntary departure in his hearing before the IJ, he has made no reference to, and hence abandoned, these claims in his petition for review before this court.

protected ground in his country. 8 C.F.R. § 1208.16(b)(2). The fear of future harm must not only exist for the applicant subjectively, but it also must be objectively reasonable. *Allabani v. Gonzales*, 402 F.3d 668, 674 (6th Cir. 2005). The alien's testimony, "if credible, may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. § 1208.16(b). However, if vague or generalized testimony is provided, an alien should provide corroborating evidence when it is readily available so that he can fulfill his burden of proof. *Dorosh v. Ashcroft*, 398 F.3d 379, 382 (6th Cir. 2004).

In reviewing the BIA's decision pertaining to a request for withholding of removal, we consider issues of law de novo, *Csekinek v. INS*, 391 F.3d 819, 822 (6th Cir. 2004), and factual findings, including credibility determinations, under the substantial evidence standard, *Singh,* 398 F.3d at 400. The substantial evidence standard requires this court to uphold the BIA's findings as long as they are "supported by reasonable, substantial, probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (quoting 8 U.S.C. § 1105a(a)(4)). Under this highly deferential standard, "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *Sylla v. INS,* 388 F.3d 924, 925 (6th Cir. 2004). Reversal of a factual determination by the BIA is warranted only when the reviewing court finds that the evidence not only supports a contrary conclusion, but compels it. *Dorosh*, 398 F.3d at 381. "No court shall reverse a determination made by a trier of fact with respect to the availability of corroborating evidence, as described in section 1158(b)(1)(B), 1229a(c)(4)(B), or 1231(b)(3)(C) of this title, unless the court finds, pursuant to

section 1252(b)(4)(B) of this title, that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable." 8 U.S.C. § 1252(b)(4)(D).

If, as in the instant case, "the BIA expressly adopts and affirms the IJ's decision but adds comments of its own, we directly review the decision of the IJ while also considering the additional comments made by the Board." *Elias v. Gonzales*, — F.3d —, No. 06-3366, 2007 WL 1713323, at *4 (6th Cir. June 15, 2007).

In the present case, petitioner bases his withholding of removal claim on a fear of future persecution because of his Christian religion, his perceived affiliation with the United States, and the fact that he is from a well-known and wealthy family. The IJ, however, concluded that there was insufficient evidence to show that petitioner's fears of future persecution were other than of a generalized nature. The IJ found that petitioner's impersonal, uncorroborated testimony with respect to his generalized fear of future persecution and torture from groups or sources unknown did not entitle petitioner to relief. We agree.

It is well established that fear "based on the existence of a generalized or random possibility of persecution in [the alien's] native country [. . .] is generally insufficient to establish persecution." *Almuhtaseb*, 453 F.3d at 750 (internal quotation marks and citation omitted); *see also Jamal-Daoud v. Gonzales*, 403 F.3d 918, 925 (7th Cir. 2005) (rejecting the applicant's contention that general evidence of growing violence against Iraqi Christians demonstrated eligibility for relief.).[6]

---

[6]*See also Elias v. Gonzales*, 212 F. App'x 441, 448 (6th Cir. 2007) (quoting *Almuhtaseb* and concluding that the Iraqi petitioner's "unsupported and non-particularized conjecture about what life might be for him in Iraq" was insufficient to establish eligibility for relief; rather, the petitioner was required to establish "that he is at particular risk as a Christian and that his predicament is

- 11 -

An applicant for withholding of removal therefore "'cannot rely on speculative conclusions or mere assertions of fear of possible persecution, but instead must offer reasonably specific information showing a real threat of individual persecution. . . . The feared persecution must relate to the alien individually, not to the population generally.'" *Harchenko v. INS*, 379 F.3d 405, 410 (6th Cir. 2004) (internal citation omitted).[7]

The IJ's findings in these analogous circumstances are supported by substantial evidence. Petitioner's proofs concerning his fear of future persecution were based upon second-hand stories heard via telephone calls from friends and relatives, who may not have had first-hand knowledge of the specific incidents of violence. Petitioner failed to establish specific reasons for the attacks about which he testified and thus failed to show that the violence was related to one or more of the statutorily protected grounds warranting withholding of removal. As the IJ noted, many of the cited attacks appeared to have been motivated by money, i.e., extortion or kidnaping for ransom, rather than membership in a particular social group or religion. Such criminal activity, without showing victimization "on account" of a statutorily protected category, does not constitute a ground for granting withholding of removal. *See Bolshakov v. INS*, 133 F.3d 1279, 1281 (9th Cir. 1998) (holding that extortion attempt and resultant attack on the petitioners who owned a business in Moscow "at most shows that they had been the victim of criminal activity in Russia" and was

appreciably different from the dangers faced by other non-Christian Iraqis.").

---

[7]*See also Odisho v. Gonzales,* 206 F.App'x 465, 470 (6th Cir. 2006), in which we held that the petitioner's proffered evidence consisting of "generalized media accounts conveying a sense of turmoil and danger in Iraq" and showing "random danger faced by the population as a whole" was inadequate to establish eligibility for relief based upon an alleged fear of future persecution. *Id*.

insufficient to establish eligibility for asylum). Moreover, petitioner testified that the people he feared in Iraq were insurgents, Muslim radicals, and criminals – not the Iraqi government or its agents. Ablahad does not contest the IJ's finding that his fears stem from non-governmental sources.

Significantly, as the IJ correctly found, Ablahad failed to proffer corroborative evidence regarding fundamental information – i.e., that his family was either wealthy and actually owned a body shop in Iraq and that the cited incidents of violence to friends and family in Iraq actually occurred. The IJ found petitioner's failure to produce such corroboration to be particularly curious, raising a "red flag" concerning petitioner's credibility, in light of the fact that his mother lived in Michigan, and his brother, sister, and uncle lived in the United States and were thus readily accessible to provide testimony or sworn statements reinforcing petitioner's claims.

In sum, substantial evidence supports the IJ's conclusion that, although Ablahad is understandably concerned about the inherent dangers of civil strife in Iraq and may have a subjective fear of returning to his native country, his testimony and application do not substantiate his claim that he would face persecution on account of a protected ground if returned to Iraq.

For these reasons, we deny the petition for review.