**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0219n.06

No. 09-4469

| | | |
|---|---|---|
| **UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT** | | |
| | | |
| ZHI ZENG CHEN, | ) | |
| | ) | |
| *Petitioner,* | ) | ON REVIEW FROM THE BOARD |
| | ) | OF IMMIGRATION APPEALS |
| v. | ) | |
| | ) | |
| ERIC H. HOLDER, JR., Attorney General | ) | |
| | ) | |
| *Respondent.* | ) | |

**FILED**
**Apr 08, 2011**
LEONARD GREEN, Clerk

Before: SUTTON and KETHLEDGE Circuit Judges; and HOOD, Senior District Judge.[*]

**PER CURIAM.** Petitioner Zhi Zeng Chen ("Petitioner") seeks judicial review of a November 20, 2009, decision of the Board of Immigration Appeals ("BIA"), which dismissed Petitioner's appeal from the immigration judge's decision denying his applications for asylum, withholding of removal, and protection under the Convention Against Torture. Petitioner argues that his due process rights have been violated because the immigration judge erroneously concluded that his application for asylum was untimely and because incompetent interpretation during the proceeding before the Immigration Court prevented him from having a full and fair hearing. He argues, as well, that the decision to deny his applications was not supported by substantial evidence because the immigration judge erroneously concluded that his testimony was not credible and, thus, that his claims were without support.

For the reasons which follow, we **DENY** the relief requested in the Petition.

---

[*] The Honorable Joseph M. Hood, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

## I.    Background

Petitioner is a native and citizen of the People's Republic of China.  He arrived in the United States at or near the Miami International Airport on November 27, 2004, without valid entry documents.  A credible fear interview was conducted on December 9, 2004.  During that interview, Petitioner testified, under oath, that he had been mistreated, threatened, and slapped by members of a Falun Gong group of which he was a member.  He also testified that he feared the Falun Gong group because they had threatened to kill him when he tried to distance himself from the group after he witnessed them participating in activities declared illegal by the Chinese government.  At the same time, Petitioner explained that he feared that government authorities could arrest him because he attended Falun Gong meetings.  Chen's case was referred to an immigration judge in Miami.

On March 24, 2005, Petitioner filed a motion to change venue to the United States Immigration Court located in New York, New York, admitted the allegations set forth in the Notice to Appear, and conceded the charge of removability.  His motion was granted on April 11, 2005, and Petitioner appeared at the New York Immigration Court on June 22, 2005.  There, he requested relief in the form of asylum, withholding of removal, and protection under the Convention Against Torture.  He was notified that he should return to the court on August 24, 2005, with his applications for relief, or his applications would be deemed abandoned.

On August 12, 2005, Petitioner sought to change venue to the Immigration Court in Cleveland, Ohio, and his motion was granted on August 23, 2005.  Petitioner appeared there for the first time on November 29, 2006.  On August 1, 2007, Petitioner submitted applications for asylum, withholding of removal, and protection under the Convention Against Torture to the Immigration Court in Cleveland and requested an individual hearing date on his applications.  In his applications, Chen indicated that he was seeking relief based on religious grounds, namely his new-found Christian faith.  He explained that, since his arrival in the United States, he had been learning about

2

Christianity from his uncle and attending church in New York and, later, Ohio. He stated that he feared persecution as a Christian in China. He also admitted that he did not tell the truth to the immigration officer who conducted his credible fear interview, explaining that he told the immigration officer what the "snakehead," or human smuggler, had told him to say for fear that he would be sent back to China.

A removal hearing was conducted on February 27, 2008, before the United States Immigration Court in Cleveland with the assistance of an interpreter, who provided translation of the proceedings in English into Mandarin Chinese for Petitioner and translation of his responses into English for the benefit of the court. During that hearing, Petitioner testified that, after his arrival in the United States and while living in Cambridge, Ohio, he would visit his uncle in New York every six weeks. During those visits, his uncle, a Christian, told him about the Bible and took him to the Grace Fujinese Church, where services were held in the Fu-zhou dialect. Eventually, his uncle referred him to a church in Ohio, but, because the services there were in English, Petitioner decided to continue attending services at the Grace Fujinese Church. He would travel to New York two or three times a month by bus on Saturday night, returning to Ohio on Sunday night or Monday. Petitioner's uncle was unable to testify at the hearing because he was in the hospital after breaking his spine.

Petitioner confirmed during cross-examination that he did not tell the truth during his credible fear interview nor could he recall what reason he gave the immigration officer for his fear of returning to China, even though he estimated his testimony during that interview to be "fifty percent true, fifty percent false." He admitted that he had never practiced Falun Gong in China, had never been harmed or threatened by a member of a Falun Gong group, and never had a fear of returning to China due to any practice of or association with Falun Gong.

Petitioner testified alternatively that he had forgotten why he came to the United States, that he was smuggled into the United States, and that he came to the United States because there is freedom of religion. He also testified that he began attending church services on Sundays at the Grace Fujian Church once a month in April 2005 and that he attended the church 23 and 28 times, respectively, in 2006 and 2007. Petitioner submitted a letter from the minister at the Grace Fujian Church stating that Petitioner had been attending the Church for Wednesday services since June 24, 2007. When questioned about the discrepancy with his own testimony concerning the length of time that he had attended the church and for which services he attended during the week, he explained that there was a mistake because he did not attend Wednesday services and that the date could be explained because he had not registered or signed in at the church when he first attended.

During the hearing, Petitioner testified that, prior to becoming a Christian, he was a Taoist. When asked if action had ever been taken against him by the Chinese authorities for being Taoist or practicing Taoism, he testified that he was arrested in July 1998 and detained for two months for practicing Taoism because the police said that Taoism was a form of superstition. The incident was not listed on his asylum application. Petitioner testified that he had not discussed his Taoism or the 1998 incident in his application for asylum because he "didn't know [he] should write it down." [AR at 122.]

Petitioner also testified that a different attorney than the one representing him at the hearing had filed an asylum application for him sometime in 2005, distinct from the 2007 application in the record. He did not have a copy of the purported 2005 application. Nonetheless, Petitioner's attorney, Stuart Altman, stated to the court that his client was mistaken and that he had, in fact, sent an I-589 asylum application on November 14, 2005, to the Immigration Court in Cleveland. Altman was prepared to present an overnight mailing receipt to demonstrate that he had mailed an I-589 to the court's address at that time. Altman explained that it was not delivered because the opening of

4

the Immigration Court was delayed and that the Cleveland court did not ultimately open its doors until September 2006.

At the conclusion of the hearing, the immigration judge found Petitioner removable and denied Petitioner's applications for asylum, withholding of removal, and protection under the Convention Against Torture. As grounds for denying his applications, the immigration judge determined that Petitioner's application for asylum contained in the record was untimely because there was no evidence of any application for asylum filed within one year after his arrival in the United States, as required by 8 U.S.C. § 1158(a)(2)(B). He was not persuaded that any filing had even been attempted because, notwithstanding Altman's efforts to introduce an overnight mailing receipt as evidence of a timely filed application, Petitioner insisted that someone else had submitted that document, which was not available. The immigration judge continued, stating that the application for asylum would have been denied even if it had been timely filed because there was no persuasive evidence that he had experienced past persecution or that he had a subjectively real and objectively reasonable fear of future persecution on account of religion. The immigration judge stated that he believed Petitioner's testimony that he had been subject to past persecution as a Taoist to be fabricated and that he did not believe that Petitioner was an actively practicing Christian, his testimony to the contrary notwithstanding, because he found Petitioner's testimony on the whole to be incredible.

The immigration judge's credibility decision turned on the fact that he found Petitioner to be "not believable in any respect" because of (1) his previously demonstrated willingness to lie under oath, citing the false but "elaborate tale of persecution" which Plaintiff had crafted in the credible fear interview, (2) his demeanor, (3) the inconsistency of Petitioner's statements about attending a church on Sundays in New York almost half the weeks in a given year over the course of nearly three years with a letter from his minister stating that Petitioner had attended on Wednesdays for less than

5

a year, and (4) his failure to mention his claim of a past persecution on the basis of his former Taoist faith in his asylum application when the claim before the Immigration Court was premised on a purported fear of persecution in China because of religion.

As the Petitioner had failed to meet the relatively low threshhold required to prove that he was a refugee for the purpose of obtaining asylum, the immigration judge concluded that he had necessarily failed to meet the higher standard required to prove a claim for withholding of removal. The immigration judge also concluded that Petitioner had presented no evidence to suggest that he would more likely than not be subject to torture if he returned to the People's Republic of China and denied his application for protection under the Convention Against Torture on those grounds.

On March 12, 2008, Petitioner filed a Notice of Appeal to the BIA; he filed a supplemental brief on May 13, 2008. In those filings, Petitioner argued that the immigration judge erred when he found Petitioner incredible and that substantial evidence did not support the immigration judge's adverse credibility finding. Specifically, he argued that his untruthfulness at the credible fear interview was wrongfully considered because it did not touch on or enhance his actual application for asylum, that his demeanor might have appeared varied during the hearing because of translation errors, and that he had presented evidence to corroborate his claim that he is a practicing Christian as well as adequately explained the inconsistency between his testimony and the minister's letter and the omission of his 1998 detention in China from his application. He argued, as well, that the immigration judge wrongly denied his application for protection under the Convention Against Torture because the Department of State Report for China, submitted to the court, showed that Petitioner would more likely than not be tortured upon returning to China. He argued that he was denied due process by virtue of the Cleveland Immigration Court's delayed opening, which Petitioner claimed "may have been the reason" that his application was untimely. He also claimed that there was evidence available (the overnight mailing receipt) to demonstrate that an application

was timely mailed, and that his counsel failed to provide the receipt earlier because he did not know that the application had not been received.

The BIA issued its decision, dismissing Petitioner's appeal, on November 20, 2009. This appeal followed.

## II.    Jurisdiction

As a general matter, we have jurisdiction to review the BIA's decision, a final agency decision under 8 C.F.R. § 1241.1, with respect to Petitioner's application for asylum, withholding of removal, and withholding of removal under the Convention Against Torture pursuant to 8 U.S.C. § 1252(a)(1). Thus, Petitioner's appeal is, as a general matter, properly before this Court, and we will consider his arguments that the immigration judge's credibility determination was not supported by substantial evidence in the record.

We lack jurisdiction, however, to review a determination that an asylum application was untimely where an appeal seeks review of discretionary or factual questions, while we may consider the issue of timeliness where constitutional claims or matters of statutory construction are raised. *See* 8 U.S.C. § 1158(a)(2)(B), (a)(3); *Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir. 2006). Petitioner argues that he was denied procedural due process with respect to the decision on the timeliness of his asylum application because he "could not file [his] application in court in a timely manner." To prevail on a due-process challenge, Petitioner must demonstrate that "the proceeding was so fundamentally unfair" that he was "prevented from reasonably presenting his case." *Hassan v. Gonzales*, 403 F.3d 429, 436 (6th Cir. 2005) (internal quotation marks omitted). He must also demonstrate "that the alleged violation affected the outcome of the proceedings; we will not simply presume prejudice." *Gishta v. Gonzales*, 404 F.3d 972, 979 (6th Cir. 2005). Petitioner has not asserted that he was actually denied a full and fair hearing on the issue of the timeliness of his application or even the merits of his application, for that matter. In fact, the immigration judge fully

7

articulated the basis for his decision that Petitioner's asylum application was untimely and then stated, in detail, alternative grounds for denying his asylum application. As the immigration judge explained, Petitioner's "application for asylum would be denied even if it had been timely filed." Petitioner has not demonstrated prejudice, so we will consider Petitioner's argument concerning the timeliness of his application no further.

Further, we may only review those issues that Petitioner has exhausted through the administrative remedies available to him. 8 U.S.C. § 1252(d)(1); *Ramani v. Ashcroft*, 378 F.3d 554, 558 (6th Cir. 2004). Thus, we have no jurisdiction to consider issues that were not presented to the BIA, including Petitioner's contention that the immigration judge erred when he failed to take into account letters written by Petitioner's father and uncle which he offers to support the contention that he was an active practitioner of the Christian faith. Nor do we have jurisdiction to consider Petitioner's claim that incompetent translation during the proceeding before the immigration judge deprived him of due process. While "[t]he function of an interpreter is an important one . . . affect[ing] a constitutional right," *Gonzales v. Zurbrick*, 45 F.2d 934, 937 (6th Cir. 1930), "an alien must demonstrate that a constitutional error caused actual prejudice; i.e., that the error materially affected the outcome of the alien's case." *Al-Ghorbani v. Holder*, 585 F.3d 980, 992 (6th Cir. 2009) (citing *Mapouya v. Gonzales*, 487 F.3d 396, 416 (6th Cir. 2007)). Before the BIA, Petitioner raised only a "generalized" claim that translation problems may have contributed to the immigration judge's adverse credibility finding without identifying how he was prejudiced by any discrete instances of inadequate translation. Since Petitioner did not properly present and exhaust this issue before the BIA, we have no jurisdiction to consider the issue.

Finally, "[w]here, as here, the [BIA] adopts and affirms the immigration judge's opinion, but writes its own opinion explaining the reasons for its decision, we review both opinions." *Abdulahad v. Holder*, 581 F.3d 290, 294 (6th Cir. 2009) (citing *Zoarab v. Mukasey,* 524 F.3d 777, 780 (6th Cir.

8

2008)); *see also Ceraj v. Mukasey*, 511 F.3d 583, 588 (6th Cir. 2007) (citing *Gilaj v. Gonzales*, 408 F.3d 275, 283 (6th Cir. 2005)) ("Because the BIA adopted the [immigration judge]'s decision with additional commentary, we review the decision of the [immigration judge], as supplemented by the BIA, as the final administrative order."). Respondent argues we may not reach the issue of whether the immigration judge erroneously relied on Petitioner's demeanor to reach an adverse credibility determination because the BIA failed to expressly address it. This argument lacks merit because we review both decisions.

**III.      Standard of Review**

The agency decision must be upheld if it is supported by substantial evidence in the record. *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992); *Yu v. Ashcroft*, 364 F.3d 700, 702-703 (6th Cir. 2004). Administrative findings of fact are conclusive unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). "This is a deferential standard: A reviewing court should not reverse 'simply because it is convinced that it would have decided the case differently.'" *Sylla v. INS*, 388 F.3d 924, 925 (6th Cir. 2004) (quoting *Klawitter v. INS*, 970 F.2d 149, 151-52 (6th Cir. 1992)). The mere "possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1996) (citing *NLRB v. Nevada Consol. Copper Corp.* 316 U.S. 105, 106 (1942); *Keele Hair & Scalp Specialists, Inc. v. FTC*, 275 F.2d 18, 21 (5th Cir. 1960)).

We review claims of the denial of due process *de novo*. *Mikhailevitch v. INS*, 146 F.3d 384, 391 (6th Cir. 1998) (citing *Ivezaj v. INS*, 84 F.3d 215, 220 (1996)).

**IV.      Discussion**

Petitioner argues that the immigration judge erred in denying his applications for asylum, withholding of removal, and protection under the Convention Against Torture and that, in turn, the

BIA erred in dismissing his appeal of that decision. Specifically, he maintains that the immigration judge's determination that Petitioner was not credible and, thus, that his claims were not credible was not supported by substantial evidence. Further, he argues that he was denied due process, i.e., a full and fair hearing, on his application for withholding of removal under the Convention Against Torture because the immigration judge failed to address the International Religious Freedom Report for China. For the reasons which follow, we find that Petitioner's arguments are without merit and will affirm the decision of the BIA.

### A. Credibility Determination by Immigration Judge

The decision by the immigration judge to deny Petitioner's applications was driven by the conclusion that Petitioner was not a credible witness. In all cases where asylum, withholding of removal, or protection under the Convention Against Torture are requested, credibility determinations are critical because aliens must carry the burden of proving their eligibility for relief.

To qualify for a discretionary grant of asylum, an alien must demonstrate that he is a refugee within the meaning of 8 U.S.C. § 1101(a)(42)(A). 8 U.S.C. § 1158(b)(1)(A). A "refugee" is an alien who is unwilling or unable to return to his or her home country "because of persecution or a well founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The alien has the burden of proving eligibility for asylum. 8 U.S.C. § 1158(b)(1)(B)(i); 8 C.F.R. § 1208.13(a); *Ndrecaj v. Mukasey*, 522 F.3d 667, 674 (6th Cir. 2008). The applicant's testimony may be sufficient to sustain his burden without corroboration, but only if he satisfies the trier of fact that his testimony is credible, persuasive, and refers to specific facts sufficient to demonstrate that he is a refugee. 8 U.S.C. § 1158(b)(1)(B)(ii).

Withholding of removal, under 8 U.S.C. § 1231(b)(3), is closely related to, but distinct from, asylum. *See Singh v. Ashcroft*, 398 F.3d 396, 401 (6th Cir. 2005). To prevail on a withholding

application, an alien must establish a "clear probability" that his life or freedom would be threatened in the proposed country of removal because of one of the protected grounds. *Pilica v. Ashcroft*, 388 F.3d 941, 951 (6th Cir. 2004) (citing *INS v. Stevic*, 467 U.S. 407, 413 (1984); *Mikhailevitch*, 146 F.3d at 391). "Clear probability" means that it is "more likely than not" that an alien would be subject to persecution, and the standard is, thus, more stringent than the burden of proof standard applied in asylum cases. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 430-32 (1987).

Finally, to establish eligibility for protection under the Convention Against Torture, an alien must demonstrate that it is "more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2); *Ramaj v. Gonzales*, 466 F.3d 520, 532 (6th Cir. 2006). "The term 'torture' only describes 'an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture.'" *Almuhtaseb*, 453 F.3d at 751 (quoting 8 C.F.R. § 1208.18(a)(2)); *see also Berri v. Gonzales*, 468 F.3d 390, 398 (6th Cir. 2006). The torture must be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1).

Credibility determinations are considered findings of fact and are reviewed under the deferential substantial evidence standard. *Yu*, 364 F.3d at 703. We may not disturb an adverse credibility determination unless the evidence "not only supports a contrary conclusion, but indeed *compels* it." *Klawitter*, 970 F.2d at 152 (emphasis in original).

In determining whether an alien's claim is credible, an Immigration judge is authorized to consider a number of factors, including:

> the demeanor . . . of the applicant or witness, . . . the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of

State on country conditions), and any inaccuracies or falsehoods in such statements, *without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim*, or any other relevant factor.

8 U.S.C. § 1158(b)(1)(B)(iii) (emphasis added). "There is no presumption of credibility. . . ." *Id.*

In the instant matter, the immigration judge concluded that Petitioner was not a credible witness because of his demeanor, because he had demonstrated a willingness to lie under oath during his credible fear interview, because of inconsistencies between Petitioner's testimony and a letter from the minister from Petitioner's church concerning when Petitioner began to attend services there and which services he attended, and because Petitioner failed to mention a purported two month detention by the Chinese authorities on account of his prior religious affiliation (Taoist) some years before in his applications, revealing it only during the hearing before the immigration judge. Once the immigration judge concluded that Petitioner was "not a believable witness" and because Petitioner was the only witness, the immigration judge found that there was simply no believable evidence presented to demonstrate that Petitioner was a practicing Christian of long or short-standing, that he had experienced past persecution or had a well-founded fear of future persecution on account of his religion at the hands of Chinese authorities, or that he would more likely than not be subjected to torture if he returned to the People's Republic of China. [AR at 55, 58.] Thus, the immigration judge concluded Petitioner's application would have been denied even if it had been timely filed.

Petitioner first argues that the immigration judge erroneously concluded that Petitioner was not credible because the immigration judge should never have considered Petitioner's falsehoods during the credible fear interview, the inconsistencies between his testimony and the minister's letter, and his omission from his applications of the purported detention by Chinese authorities because they did not enhance his claim of persecution, i.e., did not "get to the heart of the applicant's claims." The "heart of the claim" rule, which Petitioner invokes, citing *Chen v. Gonzales*, 447 F.3d 468, 472

12

(6th Cir. 2006) (addressing applications for asylum and withholding of removal filed prior to May 11, 2005), was abolished by statute for cases like Petitioner's which were filed on or after May 11, 2005. *See* 8 U.S.C. § 1158(b)(1)(B)(iii). *See also El-Moussa v. Holder*, 569 F.3d 250, 256 (6th Cir. 2009) (recognizing that REAL ID Act abrogated "heart of the claim" doctrine for cases filed on or after May 11, 2005, and made other significant changes to the Court's review of adverse credibility findings). Because the immigration judge was clearly authorized, under 8 U.S.C. 1158(b)(1)(B)(iii), to consider these falsehoods, inconsistencies, and omissions in reaching a finding on credibility, it was not error for him to do so simply because these falsehoods, inconsistencies, and omissions may not have gone directly to the basis of Petitioner's application for asylum, withholding of removal, and protection from torture.

Even so, Petitioner argues that the immigration judge miscontrued the import of his falsehood and his omission in his application and that the immigration judge's conclusion that there was an inconsistency was not supported by substantial evidence. Effectively, he argues that it was reasonable for him to spin the elaborate tale about the practice of Falun Gong that he told during his credible fear interview because the "snakehead," or human smuggler, told him to do so and that it was reasonable for him to omit past persecution as a Taoist because he was now requesting relief as a Christian. He argues, as well, that his statements about when he began to attend church in New York prior to registering with the church were not inconsistent with the letter obtained from the minister there which gave a much later date "according to [the] church registration book" and that any discrepancy based on which day of the week he attended church was minor. We have considered these arguments but cannot say that the evidence "not only supports a contrary conclusion, but indeed *compels* it." *Klawitter*, 970 F.2d at 152 (emphasis in original).

Finally, Petitioner argues that the immigration judge erroneously relied on Petitioner's demeanor to reach an adverse credibility determination because the immigration judge failed to

13

articulate specific examples of Petitioner's demeanor in announcing a decision. While the immigration judge questioned the credibility of the Petitioner for a number of reasons, the immigration judge included Petitioner's "demeanor as he testified" because "[h]is demeanor on direct examination was much different than that on cross-examination" without further elaboration. [AR at 54.] On review, the BIA rejected Petitioner's contention that he was a credible witness and concluded that the immigration judge had not clearly erred with respect to his assessment of Petitioner's credibility. The BIA's decision was, however, founded on the other factors relied upon by the immigration judge, i.e., prior falsehoods, inconsistencies between Petitioner's testimony and other evidence, including his changing testimony during the hearing, as well as the omission of the purported prior detention in his homeland from his application. The BIA omitted any discussion of Petitioner's demeanor. While an immigration judge is required to give specific reasons for any adverse credibility determination, *Abdulahad*, 581 F.3d at 294-95 (citing *Koulibaly v. Mukasey*, 541 F.3d 613, 620 (6th Cir. 2008)), we find ourselves in agreement with the BIA that the immigration judge's adverse credibility determination was supported by substantial evidence even when consideration of Petitioner's demeanor is omitted from the calculus of credibility.

In this respect, the matter at hand is easily distinguishable from that before the Ninth Circuit Court of Appeals in *Arulampalam v. Ashcroft*, 353 F.3d 679 (9th Cir. 2003), upon which Petitioner relies to support his position. In *Arulampalam*, the immigration judge made an adverse credibility determination based largely on "aspects of [the petitioner's] demeanor and method of answering questions" despite having found "no major inconsistencies in [the petitioner's] testimony" and without specifically or cogently referring to any specific aspect of the petitioner's demeanor. *Id*. at 685-86. By contrast, both the immigration judge and the BIA focused their attention in this matter on Petitioner's prior untruthfulness, inconsistencies between Petitioner's testimony and other evidence presented, as well as the failure to mention a prior detention by the Chinese authorities on

14

his applications. It may have been error for the immigration judge to rely on Petitioner's demeanor, as that term is typically understood, as a basis for an adverse credibility determination without articulating his specific concerns about it. Nonetheless, we cannot say that the adverse credibility determination was not supported by substantial evidence in the record, nor can we say that a contrary conclusion would be compelled if Petitioner's demeanor is not considered.

Accordingly, for all of the reasons above, the adverse credibility determination below is upheld.

### B.      No Denial of Due Process

Finally, Petitioner argues that he was denied due process because "[t]he Immigration Judge did not take into separate consideration the Petitioner's claim under the Convention Against Torture." Petitioner states that the International Religious Freedom Report for China "clearly shows there is torture of Christian religious adherents in China." That may be so. But the immigration judge did not believe that Petitioner was a practicing Christian. We have affirmed the immigration judge's adverse credibility finding, and, after reviewing the record, we are not compelled to conclude that Petitioner is a practicing Christian or that he will likely be subject to torture if he is returned to China. Accordingly, we deny his petition for relief on these grounds, as well.

## V.      CONCLUSION

For all of the reasons set forth above, we **DENY** the relief requested in the Petition.