**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0746n.06

**No. 10-3380**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**DANIEL ROBLERO-BERDUO**

     **Petitioner,**

**v.**

**ERIC H. HOLDER, JR., Attorney General,**

     **Respondent.**

                              /

FILED

*Nov 01, 2011*

LEONARD GREEN, Clerk

**ON PETITION FOR REVIEW FROM THE BOARD OF IMMIGRATION APPEALS**

BEFORE:    **MARTIN, CLAY, and WHITE, Circuit Judges.**

     **CLAY, Circuit Judge.** Petitioner Daniel Roblero-Berduo petitions for review of an order of the Board of Immigration Appeals ("BIA" or "the Board") affirming a decision of the immigration judge ("IJ"). The IJ denied Roblero-Berduo's applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). For the reasons stated below, Roblero-Berduo's petition for review is **DISMISSED in part** and **DENIED in part**.

**BACKGROUND**

     Petitioner was born in Guatemala in 1980. Roblero-Berduo traveled to the United States in 1999, at the age of eighteen. He left Guatemala around May 2 of that year, arriving in Phoenix, Arizona, roughly ten or fifteen days later. His parents and two brothers remain in Guatemala.

In July 2006, Petitioner was served with a Notice to Appear before an IJ in Detroit, Michigan. At a hearing before the IJ, Petitioner admitted most of the allegations in the Notice, claimed to have entered the United States on May 2, 1999, and conceded his removability. Roblero-Berduo requested withholding of removal as a refugee and CAT withholding. Though he initially acknowledged that he was time-barred from seeking asylum, Roblero-Berduo later argued that changed country conditions in Guatemala excused his failure to request asylum within the one-year statutory limitation period.

Petitioner is an avowed Evangelical Christian, as are several members of his family. When Roblero-Berduo was twelve years old, Roblero-Berduo, his father, and his brother were leaving church. Between ten and fifteen guerrillas surrounded Roblero-Berduo's father and accused him of converting several guerrillas to Christianity. The guerrillas then kidnapped Roblero-Berduo's father, beat him, and held him for a day. Largely on account of that incident, Roblero-Berduo fears that guerrillas will persecute him on the basis of his faith if he returns to Guatemala.

At the hearing in front of the IJ, Petitioner offered other evidence of persecution against Evangelical Christians in Guatemala. Roblero-Berduo produced a newspaper article describing an Evangelical Christian couple that was kidnapped, tortured, and killed after leaving a religious retreat on an unspecified date. Roblero-Berduo also testified that guerrillas have beaten his siblings on account of their church activities since he left Guatemala . His asylum application did not refer to his siblings specifically but stated, "I would be subject to torture as many others in my family have been . . . ." (A.R. 260.)

Gang members also killed Roblero-Berduo's cousin, Armando. Armando worked as a bus driver at the time of the incident, and the gang members killed Armando because he refused to surrender the money he had collected from passengers. The IJ cast doubt on whether Armando's murder was in any part motivated by religious persecution, reasoning that Roblero-Berduo had not produced any evidence suggesting that motive.

The IJ found Roblero-Berduo's testimony regarding his father's kidnapping credible, but, in other respects, the IJ assigned Roblero-Berduo's testimony negative credibility. For example, on his asylum application, Roblero-Berduo stated that he lived in Los Angeles from 2001 through 2005, after which he moved to Detroit. In his 2007 testimony, Roblero-Berduo asserted that he had been attending a church in Detroit for nine years. When the IJ asked him to explain the discrepancy between these statements, Roblero-Berduo explained that he attended church in Detroit while living in California. The IJ also noted Roblero-Berduo's failure to provide evidence regarding his relationship with his cousin, Armando, and evidence in support of his claim that guerillas beat his siblings.

The IJ denied all three of Roblero-Berduo's applications, and the BIA affirmed the IJ's decision. Roblero-Berduo timely petitioned for review of the BIA's decision to this Court, which has authority to review a BIA decision under 8 U.S.C. § 1252.

## DISCUSSION

### I.     Asylum

Roblero-Berduo challenges the BIA's denial of his asylum application, arguing that the IJ and the BIA should have concluded that changed country conditions allowed Petitioner to apply for asylum beyond the one-year statute of limitations. Respondent contends that this Court lacks the jurisdiction to undertake such a review, and we agree.

We review questions of subject matter jurisdiction *de novo*. *Lacey v. Gonzales*, 499 F.3d 514, 518 (6th Cir. 2007) (citing *Bauer v. RBX Indus., Inc.*, 368 F.3d 569, 578 (6th Cir. 2004)). The party invoking jurisdiction bears the burden of proof. *Id.* (citation omitted); *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 462 (6th Cir. 2010).

The Attorney General or Secretary of Homeland Security may grant asylum to an alien who has "a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion," in his country of nationality or residence. 8 U.S.C. §§ 1158(b)(1)(A), 1101(a)(42)(A). An alien must apply for asylum within one year after the date of his arrival in the United States. § 1158(a)(2)(B). The Attorney General may consider an application filed beyond the limitations period if the alien demonstrates "the existence of changed circumstances which materially affect the applicant's eligibility for asylum." § 1158(a)(2)(D).

Section 1158(a)(3) prohibits a court from reviewing "any determination of the Attorney General" related to an asylum application's timeliness or an alien's showing of changed circumstances. Before Congress amended the Immigration and Nationality Act ("INA") with the Real ID Act of 1995, this Court held that § 1158(a)(3) prohibited judicial review of any denial of asylum, where the IJ has found that an application was untimely and changed circumstances did not extend the application deadline. *See Castellano-Chacon v. INS*, 341 F.3d 533, 544 (6th Cir. 2003).

4

The Real ID Act did not alter § 1158(a)(3), but it recognized a court of appeals' continuing jurisdiction over "constitutional claims [and] questions of law raised upon a petition for review." 8 U.S.C. § 1252(a)(2)(D). In *Almuhtaseb v. Gonzales*, 453 F.3d 743 (6th Cir. 2006), this Court modified the holding of *Castellano-Chacon* "to bar our review of asylum applications denied for untimeliness only when the appeal seeks review of discretionary or factual questions . . . ." *Id.* at 748. The BIA's conclusion in this case that changed country conditions did not excuse Roblero-Berduo's untimely asylum application is a factual question that § 1158(a)(3) and *Almuhtaseb* prohibit us from reaching.

Petitioner attempts to refashion the issue, arguing that he seeks review of a question of law rather than a question of fact. According to Petitioner, the BIA applied the incorrect standard in determining whether changed circumstances justified his late application. Petitioner points out that governing regulations define "changed circumstances" in § 1158(a)(2)(D) as "includ[ing], but not limited to: (A) [c]hanges in conditions of the applicant's" resident nation, "(B) [c]hanges in the applicant's circumstances that materially affect [his] eligibility for asylum," and "(C) [i]n the case of an [applicant] who had previously been included as a dependent" on an asylum application, a change in the relationship making him a dependent. 8 C.F.R. § 1208.4(a)(4)(i) (subdivisions in original). Emphasizing the phrase "include, but . . . not limited to," Petitioner argues that the BIA erred by failing to consider the "totality of the changed circumstances."

Petitioner's argument is unconvincing. He does not argue that the IJ or BIA omitted specific changed circumstances from their consideration. Rather, he recites the evidence he submitted and suggests the IJ and BIA should have arrived at a different conclusion. No matter how Roblero-

Berduo describes his line of argument, it plainly contests factual determinations that we may not revisit. *See Almuhtaseb*, 453 F.3d at 748. Therefore, we dismiss this portion of the petition for review for lack of jurisdiction.

**II.    Withholding of Removal Under the Immigration and Nationality Act and the Convention Against Torture**

**A.    Legal Framework**

Roblero-Berduo applied for withholding of removal under INA and the CAT. *See* INA § 241(b)(3); 8 U.S.C. § 1231(b)(3); 8 C.F.R. § 208.18. Where the BIA issues a decision, this Court reviews the BIA's decision and any portions of the IJ's ruling incorporated in that decision as the final agency order regarding the petitioner's removal. *Zhao v. Holder*, 569 F.3d 238, 246 (6th Cir. 2009). The Court reviews the IJ's decision while considering additional comments from the BIA. *Mapouya v. Gonzales*, 487 F.3d 396, 405 (6th Cir. 2007).

An applicant is eligible for withholding of removal if, upon removal to his nation of residence, his "life or freedom would be threatened in that country because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3). The applicant must prove that he is more likely than not to suffer persecution on a protected ground. 8 C.F.R. § 1208.16(b)(2). In order to demonstrate a likelihood of persecution, an applicant must demonstrate "more than a few isolated incidents" of "physical punishment, infliction of harm, or . . . significant deprivation[s] of liberty" on a protected ground. *Mikhailevitch v. INS*, 146 F.3d 384, 390 (6th Cir. 1998). The persecution must be directed to persons who "differ (in race, religion, or political opinion) in a way that is regarded as offensive." *Id.* at 389 (quoting *Surita v. INS*, 95 F.3d 814, 819 (9th Cir. 1996) (citation omitted)).

6

Additionally, an applicant may be eligible for withholding of removal under the CAT if he proves that, upon removal to his nation of residence, he is likely to be tortured. 8 C.F.R. § 208.16(c). In pertinent part, the applicable regulation defines torture as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person" for certain purposes, such as intimidation, punishment, or discrimination. 8 C.F.R. § 1208.18(a)(1). A CAT applicant must establish a "particularized threat of torture." *Castellano-Chacon*, 341 F.3d at 551.

The applicant's testimony can carry the his burden without corroboration if it is credible. 8 C.F.R. § 1208.16(b) & (c)(2). The Court reviews an IJ's factual findings and credibility determinations for substantial evidence. *Zhao*, 569 F.3d at 246. We must uphold the IJ's factual determination "as long as it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* at 247 (internal quotations and citations omitted). The Court may only reverse a fact determination if a "reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Though an IJ's credibility determination is entitled to substantial deference, the adverse credibility finding must be supported by specific reasons and must be based on an inconsistency that "go[es] to the heart of the applicant's claim." *Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004).

The BIA's order denying withholding of removal must be upheld unless it is "manifestly contrary to the law and represents an abuse of discretion." *Ali v. Reno*, 237 F.3d 591, 596 (6th Cir. 2001) (citing 8 U.S.C. § 1252(b)(4)(B) and (D)). In order to obtain a reversal, a petitioner must demonstrate that the evidence compels a conclusion contrary to that of the BIA, rather than that the

evidence merely supports a contrary conclusion. *Yu v. Ashcroft*, 364 F.3d 700, 702-03 (6th Cir. 2004).

### B.     IJ's Credibility Determination

Roblero-Berduo challenges the IJ's finding that part of his testimony lacked credibility. In her opinion denying Petitioner's applications, the IJ explicitly assigned positive credibility to Roblero-Berduo's testimony as a whole. Specifically, the IJ found Roblero-Berduo's account of his father's kidnapping—the incident she considered central to his applications—credible. However, the IJ found other areas of Roblero-Berduo's testimony incredible. Those areas included Roblero-Berduo's contention that his siblings suffered religious persecution, which he offered late on cross-examination and which the IJ found lacking in support elsewhere in the record; the motivation ascribed to the murder of his cousin; and his assertion that he attended church in Detroit while living in California.

The reservations the IJ expressed about Petitioner's testimony played no part in the BIA's decision to affirm. The BIA reasoned that the documentary evidence and the fact that Petitioner's family has remained in Guatemala since 1992 controverted Petitioner's claim that he was likely to suffer religious persecution if removed. By omitting any reference to the IJ's credibility determination, the BIA signaled that it would have reached the same result even if the IJ had rated Roblero-Berduo's testimony as entirely credible. Since Roblero-Berduo's credibility did not affect the Board's decision, and because the IJ rated the most crucial portion of Petitioner's testimony as

positive, Petitioner's challenge to the IJ's credibility decision does not determine the disposition of his petition.[1]

## C. Immigration and Nationality Act

Roblero-Berduo mounts two challenges to the conclusion that he failed to demonstrate a likelihood of persecution upon his removal to Guatemala. First, Roblero-Berduo argues that the IJ and BIA overlooked substantial evidence of the steady increase in Guatamela's crime rate and the converse deterioration of the civil authorities' ability to limit gang violence. Roblero-Berduo provided the IJ with significant documentary evidence of the violence in Guatemala and the inexperience and corruption that prevent the police from countering gang violence. On the basis of this evidence, Roblero-Berduo contends that the IJ and BIA should have concluded he is likely to suffer religious persecution in Guatemala.

This Court has explained that an applicant seeking withholding of removal must demonstrate that he is at particular risk of persecution. *Almuhtaseb*, 453 F.3d at 750 (citing *Singh v. INS*, 134 F.3d 962, 967 (9th Cir. 1998)). A general or random possibility of persecution in the proposed country of removal typically does not support withholding. *Castellano-Chacon*, 341 F.3d at 550; *Almuhtaseb*, 453 F.3d at 750. Rather, an applicant must demonstrate a likelihood of persecution "on

---

[1]In any event, we would have rejected Petitioner's challenge. The most significant portion of Roblero-Berduo's testimony that the IJ dismissed as incredible regarded the motive for his cousin's murder. Roblero-Berduo failed rebut the IJ's suggestion that the murder stemmed from a robbery rather than from religious persecution. Because of Roblero-Berduo's vagueness in describing the circumstances of his cousin's murder, the IJ did not treat that portion of the testimony as evidence of a threat to Petitioner's safety as an Evangelical Christian. The IJ cited specific reasons for discounting Roblero-Berduo's credibility on this point, and we find no evidence compelling us to conclude that the determination was incorrect. *See* 8 U.S.C. § 1252(b)(4)(B).

account of" religion or another protected ground. 8 C.F.R. § 1208.16(b). Roblero-Berduo's evidence of Guatemala's gang violence supports the proposition that he is at risk of violence, but it does not support the proposition that he is at risk of violence "on account of" his religion. *Id.* We disagree with Petitioner's contention that the aforementioned evidence compelled a different conclusion.

Second, Roblero-Berduo argues the IJ and BIA assigned too little weight to the evidence of religious persecution his family has suffered. We disagree. The IJ and Board offered sound reasons for declining to treat Petitioner's father's kidnapping as dispositive. The BIA and IJ relied on the fact that, even after his father's kidnapping, many members of Roblero-Berduo's family have remained in Guatemala since 1992. Furthermore, Roblero-Berduo's father continues to evangelize door-to-door. As this Court has previously reasoned, the fact that similarly-situated family members remain in the proposed country of removal cuts against the conclusion that a petitioner is likely to suffer religious persecution upon removal. *See Koliada v. INS*, 259 F.3d 482, 488 (6th Cir. 2001). The fact that Roblero-Berduo's family members continue to practice their religion in Guatemala, along with Roblero-Berduo's failure to provide other reliable evidence of the persecution of Evangelical Christians in Guatemala, requires this Court to affirm the order of the BIA.

**D.      Convention Against Torture**

It is unclear from Petitioner's brief whether he challenges the BIA's denial of his application for CAT withholding on appeal. Assuming he does, we deny Roblero-Berduo's petition. The Board affirmed the IJ's denial of Roblero-Berduo's CAT application on the same basis it affirmed the IJ's denial of his withholding of removal claim. It specifically cited the IJ's finding that Petitioner's

family has remained in Guatemala since 1992 without incident and Petitioner's failure to offer evidence that Evangelical Christians are tortured in Guatemala. On appeal, Roblero-Berduo has failed to demonstrate that the evidence of record compels the contrary conclusion. *See Yu*, 364 F.3d at 702-03. Therefore, we deny the petition for review on this basis.

## CONCLUSION

For the foregoing reasons, we **DISMISS in part** and **DENY in part** Roblero-Berduo's petition for review.